**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

BEAVER COUNTY EMPLOYEES' RETIREMENT FUND; ERIE COUNTY EMPLOYEES' RETIREMENT SYSTEM; and LUC DE WULF, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

TILE SHOP HOLDINGS, INC.; ROBERT A. RUCKER; THE TILE SHOP, INC.; TIMOTHY C. CLAYTON; PETER J. JACULLO III; JWTS, INC.; PETER H. KAMIN; TODD KRASNOW; ADAM L. SUTTIN; WILLIAM E. WATTS; ROBERT W. BAIRD & CO. INCORPORATED; CITIGROUP GLOBAL MARKETS INC.; CJS SECURITIES, INC.; HOULIHAN LOKEY CAPITAL, INC.; PIPER JAFFRAY & CO.; SIDOTI & COMPANY, LLC; TELSEY ADVISORY GROUP LLC; and WEDBUSH SECURITIES, INC.,

Defendants.

Civil No. 0:14-cv-00786-ADM-TNL

**THE TILE SHOP DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Date: July 25, 2014.

**FAEGRE BAKER DANIELS LLP**
Wendy J. Wildung (#117055)
Justin P. Krypel (#0389385)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600

*Attorneys for Defendants Tile Shop Holdings, Inc., Robert A. Rucker, The Tile Shop, Inc. and Timothy C. Clayton*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 3

III. ARGUMENT ........ 5

A. The Section 10(b) Claim Should Be Dismissed ........ 5

1. With One Exception, The Complaint Fails To Identify Any Potentially Actionable Misstatements Or Omissions, Or To Plead Facts Showing That They Were False When Made ........ 7

a. The Zhang-omission claims are not adequately pleaded ........ 9

b. Allegations about "trends" are insufficient ........ 11

c. Accurate reports of Tile Shop's gross margins are not actionable ........ 12

d. Statements about the strength of Tile Shop's supply chain and producer relationships are not actionable ........ 15

e. Statements that Tile Shop does not control its suppliers are not actionable ........ 17

2. The Complaint Fails To Plead Facts Giving Rise To A Strong Inference Of Scienter ........ 18

a. The Section 10(b) claim against Clayton must be dismissed for failure to plead scienter ........ 19

b. The Section 10(b) claim against Rucker should be dismissed for failure to plead scienter ........ 19

(i) Allegations that Rucker "must have known" are insufficient ........ 20

(ii) Allegations that Nishi was Rucker's brother-in-law are insufficient ........ 22

(iii) The information from the FEs is insufficient ........ 23

(iv) Allegations about Rucker's divorce are irrelevant ................................ 24

(v) Allegations about Rucker's motive are insufficient ............................... 25

c. The Section 10(b) claim against Tile Shop should be dismissed for failure to plead scienter ........................................................................ 27

d. An inference of nonfraudulent intent is more plausible ................................ 29

B. The 1933 Act Claims Should Be Dismissed........................................................... 30

C. The Controlling Person Claims Should Be Dismissed ............................................ 31

IV. CONCLUSION ......................................................................................... 31

# I. INTRODUCTION

Bad press today, securities suit tomorrow. In today's litigation-charged environment, this sequence of events is familiar to just about every publicly-held company that finds itself in the news for the wrong reasons – regardless of whether the news had anything to do with a fraud on investors.

Defendant Tile Shop Holdings, Inc. ("Tile Shop" or the "Company"), a Minnesota-based retailer, is no exception. On November 14, 2013, Gotham City Research ("Gotham"), an analyst for short-sellers, issued a report in which it claimed that Beijing Pingxui ("BP"), a Chinese export company from which Tile Shop exported product, was owned and/or controlled by Fumitake Nishi ("Nishi"). (Compl. ¶¶159-60.) Nishi was Tile Shop's purchasing supervisor and the brother-in-law of Robert Rucker ("Rucker"), Tile Shop's CEO. (¶159.) Gotham speculated that as a result of the purchases from BP, Tile Shop's financial statements may have been misstated. Tile Shop's stock price plunged based upon the "short report." (¶163.)

Tile Shop's directors, who are also defendants in this action, acted immediately to commence an investigation under the auspices of the Audit Committee. (Compl. ¶164.) That investigation concluded that (1) Tile Shop's financial statements were not misstated, but (2) unbeknownst to the Company or Rucker, Nishi had acquired ownership of BP in late 2011, had acquired an interest in vendor Nanyang Helin Stone Co. Ltd. ("NHS") in 2010, and had received payments from certain Tile Shop vendors for consulting services. (*Id.*) As a result of the Audit Committee's investigation, Tile Shop terminated Nishi effective January 1, 2014 for violation of the Company's business ethics

policy, stopped doing business with BP, and notified NHS that it needed to separate from Nishi or it would lose Tile Shop's business. (¶165.)

Although the Audit Committee investigation indicated that the situation involved a rogue employee, several shareholders rushed into court with securities class actions. Plaintiffs' Consolidated Amended Complaint ("Complaint") alleges that Tile Shop and its officers Robert Rucker and Timothy Clayton ("Clayton") committed a fraud-on-the-market during the alleged class period of August 22, 2012 through January 28, 2014 ("Class Period") in violation of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"). The Complaint further alleges that Tile Shop, its two officers, and its directors, violated Section 11 and/or Section 12(a)(2) of the Securities Act of 1933 ("1933 Act") by engaging in two secondary offerings of securities during the Class Period (the "Offerings"). Lacking facts indicative of fraud, Plaintiffs have larded their Complaint with speculation, insinuation, and irrelevant allegations about unrelated legal proceedings and unrelated accounting issues.

Defendants Tile Shop, Rucker, Clayton, and The Tile Shop, Inc. ("Tile Shop Defendants") now move to dismiss the Complaint because it fails to comply with the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Fed. R. Civ. P. 9(b), and otherwise fails to state actionable claims under the federal securities laws.

Except for its allegations that Nishi-related transactions should have been disclosed, the Complaint fails to identify any allegedly false or misleading statements or to plead facts showing that such statements were false or misleading when made. The Complaint further fails to plead facts showing a strong inference of scienter as to any

statements or omissions, including those involving Nishi. Thus the Complaint fails to state 1934 Act claims.

Plaintiffs' 1933 Act claims as to the 2013 Offering fail because Plaintiffs have not met their burden to plead facts showing that their shares were purchased in that Offering or are traceable to it. Plaintiffs thus lack standing to bring those claims. Plaintiffs also have not been damaged as a result of the 2012 Offering within the meaning of Section 12(a)(2), thus that Section 12(a)(2) claim fails, too.

Accordingly, as discussed below, the Complaint should be dismissed.

## II. STATEMENT OF FACTS[1]

Defendant Tile Shop owns and operates retail stores that sell tile. (Compl. ¶15.) Its stock became publicly-traded on NASDAQ as of August 22, 2012. (¶85.) Since then, Tile Shop's large shareholders have sold a portion of their Tile Shop stock in secondary public offerings that occurred on December 12, 2012 ("2012 Offering") and June 5, 2013 ("2013 Offering"). (¶¶16, 19, 21-24.)

Plaintiffs are three investors who seek to represent classes consisting of purchasers of Tile Shop stock: (1) in the 2012 Offering; (2) in the 2013 Offering; and (3) in the open market during the Class Period. (Compl. ¶1.)

---

[1] Tile Shop Defendants reference and submit as exhibits ("Ex. __") to the Affidavit of Wendy J. Wildung certain SEC filings and press releases of Tile Shop. On a motion to dismiss, a court may consider documents on which a complaint relies, documents incorporated by reference, and matters of which a court may take judicial notice, including SEC filings. *Tellabs*, 551 U.S. at 322; *Silver v. H&R Block*, 105 F.3d 394, 397 (8th Cir. 1997); *In re K-Tel Int'l Sec. Litig.*, 300 F.3d 881, 889 (8th Cir 2002); *see* Fed. R. Evid. 201.

Besides Tile Shop, the Defendants consist of:

(1) Rucker, Tile Shop's founder, large shareholder, CEO, and a director (¶16);

(2) Clayton, Tile Shop's CFO since the Company became public (¶18);

(3) The Tile Shop, Inc. ("TSI"), an investment company owned by Rucker that holds Rucker's Tile Shop stock (¶17);

(4) Tile Shop's outside directors Peter Jacullo, Peter H. Kamin, Adam L. Suttin, Todd Krasnow, and William E. Watts ("Outside Directors") (¶¶19, 21-24);

(5) JWTS, Inc. ("JWTS"), an investment company owned by Peter Jacullo that holds Tile Shop stock (¶20); and

(6) Eight investment banking firms, each of which was an underwriter in one or both of the Offerings ("Underwriter Defendants") (¶¶26-34).

On January 27, 2014, Tile Shop announced the results of its Audit Committee investigation into the allegations made in the Gotham "short report." Tile Shop stated, in relevant part, that:

> Fumitake Nishi, the brother-in-law of CEO Robert Rucker and a former Company employee, acquired BP in late 2011. The investigation found that while BP primarily processed export transactions on an agency basis on behalf of the Company's vendors, it also operated a business model that would take title to product and resell that product to the Company. The report confirmed that Mr. Nishi failed to disclose to the Company the existence of this "reseller" model and his ownership of BP . . . . The report found no evidence that the Company overpaid vendors through the BP relationship, nor did it underpay vendors through the BP relationship. . . .
>
> Mr. Nishi personally received payments from representatives of certain vendors during the period September 2011 through December 2013 . . . . The investigation identified approximately $1.1 million that was deposited into Mr. Nishi's personal bank accounts in China over the above-referenced period.

(Compl. ¶164.)

Plaintiffs allege that Tile Shop's SEC filings and press releases during the Class Period were false and misleading in violation of Section 10(b) due to their failure to disclose alleged related-party transactions. The Complaint alleges claims against Tile Shop, Rucker, and Clayton as primary violators (Count IV), and against the Rucker, Clayton, TSI, the Outside Directors, and JWTS as controlling persons of Tile Shop (Count V).

Plaintiffs also allege that Tile Shop's Registration Statements for the Offerings violated the 1933 Act by omitting to disclose certain alleged related-party transactions. The Complaint alleges Section 11 claims against Tile Shop, the individual defendants, and the Underwriter Defendants (Count I); Section 12(a)(2) claims against Tile Shop, Rucker, Clayton, TSI, JWTS, and the Underwriter Defendants (Count II); and controlling person claims against TSI, JWTS, and the individual defendants (Count III).

## III. ARGUMENT

### A. The Section 10(b) Claim Should Be Dismissed.

To state a claim for securities fraud under Section 10(b), Plaintiffs must allege that, in connection with the purchase or sale of a security: (1) Defendants made a material misrepresentation or omission; (2) with scienter; (3) on which Plaintiffs justifiably relied; and (4) that caused Plaintiffs to incur economic loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

In a securities fraud class action like this one, Plaintiffs must satisfy the standard pleading requirements of the Federal Rules of Civil Procedure, and the heightened pleading requirements of the PSLRA.

Rule 12(b)(6) requires Plaintiffs to plead factual allegations that "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." These circumstances "include such matters as the time, place and contents of false representations." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982).

"The PSLRA heightens the Federal Rule of Civil Procedure 12(b)(6) standard in two important ways." *NECA-IBEW Pension Fund v. Hutchinson Tech., Inc.*, 536 F.3d 952, 958 (8th Cir. 2008). First, under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is based." 15 U.S.C. §78u-4(b)(1). Second, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind." 15 U.S.C. §78u-4(b)(2). If the inference created from the particular facts alleged is weak, or even permissible or reasonable but not strong, the complaint must be dismissed. *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023,

1029 (8th Cir. 2011) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007)).

Under the PSLRA, a court must "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute." *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir.2001); *accord Hutchinson Tech.*, 536 F.3d at 958 ("we reject unwarranted inferences and conclusory or catch-all assertions of law"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (U.S. 2009) (under Rule 12(b)(6), allegations that are "no more than conclusions, are not entitled to the assumption of truth").

**1. With One Exception, The Complaint Fails To Identify Any Potentially Actionable Misstatements Or Omissions, Or To Plead Facts Showing That They Were False When Made.**

With one exception, Plaintiffs have neither identified any potentially actionable misstatements or omissions, nor pleaded facts showing that Tile Shop's statements were false or misleading when made.

The one exception is Plaintiffs' allegation that Tile Shop should have disclosed its transactions with BP and NHS because Nishi owned all of BP and a portion of NHS. (Compl. ¶51.) For purposes of this motion, the Tile Shop Defendants do not dispute that Item 404(a) of Regulation S-K, 17 C.F.R. §229.404, calls for disclosure in Tile Shop's annual report of any transaction in an amount exceeding $120,000 with any entity in which a "related person" to a director or executive officer of Tile Shop has a direct or indirect material interest. Similarly, for purposes of this motion, the Tile Shop Defendants do not dispute that the Instructions to Item 404(a) define "related person" to

include a "brother-in-law." (Compl. ¶51.) While Plaintiffs' omission claims about Nishi ultimately fail due to a lack of facts showing a strong inference of scienter, *see infra* at 18-29, the Nishi-omission claim is sufficiently identified in the Complaint to satisfy the PSLRA.

The remainder of the Complaint, however, does not plead actionable misstatements or omissions in conformance with the PSLRA. To begin with, the Complaint quotes large portions of Tile Shop's public statements without specifically identifying which portions of those statements are alleged to have been false or misleading, and without tying particular statements to particular factual allegations that, if proven, might tend to show that the quoted statements were false and misleading. This "puzzle-style" pleading does not satisfy the PSLRA. *See Gilmore v. Novastar Fin., Inc.,* 579 F.3d 878, 883 (8th Cir. 2009) ("absent an indication of precisely *what* statements [plaintiff] alleges to be misleading, it is difficult, if not impossible, to determine whether the complaint adequately specified *why* each statement was misleading") (emphasis in original); *McDonald v. Compellent Techs., Inc.*, 805 F. Supp. 2d 725, 734 (D. Minn. 2011).

The Complaint also fails to plead facts showing the falsity of the statements quoted. The PSLRA's standard for pleading falsity is a high one. Conclusory allegations of falsity do not suffice. *Hutchinson Tech.*, 536 F.3d at 958. Likewise, alleging "that defendants made statements and then showing in hindsight that the statement is false" does not satisfy the PSLRA. *Elam v. Neidorff,* 544 F.3d 921, 927 (8th Cir.2008) (citation and quotation omitted). Instead, Plaintiffs must "indicate why the alleged

misstatements were false when made." *Lustgraaf v. Behrens,* 619 F.3d 867, 874 (8th Cir. 2010). The PSLRA requires allegations of "facts or further particularities that, if true, demonstrate that the defendants had access to, or knowledge of, information contradicting their public statements when they were made." *In re Navarre Corp. Secs. Lit.*, 299 F.3d 735, 742 (8th Cir. 2002).

If the Court opts to parse the Complaint, Plaintiffs appear to complain about four categories of statements or omissions:

(1) Omission of information about alleged related-party transactions (¶¶4-8, 36, 38-39, 44-45, 48-49, 53, 56, 60, 64-65, 91-92, 98, 123, 125, 128-132, 134-136, 139-140, 142, 144, 147-151, 153-159, 161, 168, 169);

(2) Statements about Tile Shop's gross margins (¶¶123-124, 126-127, 133, 135, 140-146, 160);

(3) Statements about the strength of Tile Shop's supply chain (¶¶8, 36, 40-43, 46, 110-117, 124, 128, 133, 137, 140, 143, 147, 153, 156); and

(4) Statements that Tile Shop does not control its suppliers (¶¶120, 131, 138, 140, 155, 158).

None of these categories is adequately pleaded, except for the Nishi-omission claim.

**a. <u>The Zhang-omission claims are not adequately pleaded.</u>**

The Complaint improperly lumps Nishi together with Pan Zhang and Jian Zhang (the "Zhangs"), and calls them all "Rucker's relatives." (Compl. ¶53.) In reality the Complaint does not contain any facts indicating that the Zhangs were "related persons" to Rucker within the meaning of Item 404(a).

The Instructions to Item 404(a) define "related persons" to be "[a]ny immediate family member of a director or executive officer." *Id.* Instructions, at 1(a)(iii). Immediate family members are specifically defined as:

> …any child, stepchild, parent, stepparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law of such security holder, and any person (other than a tenant or employee) sharing the household of such director, executive officer, or nominee for director.

*Id.* The SEC has explained that "any immediate family member" includes

> *only* those persons who are related by blood or step relationship to the primary reporting person or his spouse (i.e., the sister of a director's spouse is considered a sister-in-law for purposes of this item; *the sister's husband*, however, is *not* considered a brother-in-law for purposes of this item).

SEC Compliance and Disclosure Interpretations: Reg.S-K (emphasis added), at http://www/sec.gov/divisions/corpfin/guidance/regs-kinterp.htm.

According to the Complaint, Pan Zhang is Rucker's nephew by marriage. (Compl. ¶4.) The Complaint makes no specific allegation about Rucker's relation to Jian Zhang, except to say that he "is related to Rucker's wife." (*Id.*) One can infer from the Complaint that Jian Zhang is Rucker's wife's brother-in-law. These are not "related persons" for purposes of Item 404(a).

The Complaint thus fails to allege any reason why Tile Shop had an obligation to disclose anything with respect to the Zhangs. And Plaintiffs cannot succeed on a generic claim that these alleged relationships *should have been* disclosed because "§10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano,* 131 S. Ct. 1309, 1321

(U.S. 2011). Because Tile Shop had no obligation to disclose any alleged transaction with the Zhangs, its failure to do so cannot be actionable. *Basic, Inc. v. Levinson*, 108 S. Ct. 978, 987 n. 17 (U.S. 1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."); *Public Pension Fund Group. v. KV Pharmaceutical Co.*, 679 F.3d 972, 984 (8th Cir. 2012) (same).

**b. <u>Allegations about "trends" are insufficient.</u>**

Plaintiffs also claim that Tile Shop should have disclosed unspecified related-party transactions—without saying which specific transactions or who they were with—because they constituted "known trends or uncertainties" under Item 303 of Regulation S-K, 17 C.F.R. §229.303. (Compl. ¶¶61-66.) A disclosure duty exists under Item 303 "when a trend or event is both (1) 'presently known to management,' and (2) 'reasonably likely to have a material effect on the registrant's financial condition or results of operation.'" *In re Gander Mountain Co. Secs. Litig.*, 2006 WL 140670, at *15 (D. Minn. Jan. 17, 2006) (internal citation omitted).

Because the Complaint alleges that the unspecified related-party transactions were a long-time practice of Tile Shop preceding the Class Period (Compl. ¶¶4, 43, 45, 48), such alleged transactions (even if they had been occurring) could not constitute "trends" or "uncertainties" that could alter Tile Shop's *future* performance. *See City of Roseville Emp. Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 426 (S.D.N.Y. 2011) (dismissing Item 303 allegations because complaint did not allege that facts "were uncertain or changed over time, but rather that they were always present");

*Plymouth County Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 558 (M.D.N.C. 2013) (same).

Further, Plaintiffs do not allege how the mere fact of related-party transactions was "reasonably likely" to have a material impact on Tile Shop's financials. Indeed, after Tile Shop terminated Nishi and stopped doing business with BP, its gross margins remained essentially the same, as discussed *infra* at 14. *See Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1192 (11th Cir. 2002) (no disclosure obligation because allegedly omitted information did not render company's "reported results any materially less indicative of the company's future prospects"). And Plaintiffs do not plausibly allege that Tile Shop's management actually knew of Nishi's unethical activities, as discussed below. *See J&R Mktg v. GMC,* 549 F.3d 384, 391-92 (6th Cir. 2008) (dismissing claims where information was knowable, rather than actually known because Item 303 requires actual knowledge); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 614 (S.D.N.Y. 2008) (trend must actually be known).

For all of these reasons, Item 303 does not provide a basis for Plaintiffs to allege that the Tile Shop Defendants committed securities fraud by failing to disclose unspecified related-party transactions.

**c. Accurate reports of Tile Shop's gross margins are not actionable.**

Plaintiffs also complain, in conclusory fashion, that Tile Shop's gross margins were "bloated" as a result of the alleged undisclosed related-party transactions. (Compl. ¶126.) However, Plaintiffs do not allege that these gross margin numbers were

misstated. Indeed, Tile Shop never restated or revised its financials during the Class Period.[2] *See Hutchinson Tech.,* 536 F.3d at 960 (noting that "Hutchinson has never restated its financials"); *In re Patterson Cos.,* 479 F. Supp. 2d 1014, 1030 (D. Minn. 2007) ("None of the company's earnings during the putative Class Period have been restated."); *In re 2007 Novastar Fin., Inc., Sec. Litig.,* 2008 WL 2354367, at *3 (W.D.Mo. June 4, 2008) ("it is noteworthy that nobody – the SEC, Novastar's auditors, or anyone else – has suggested Novastar should or must restate its financial reports .. . ."), *aff'd,* 579 F.3d 878 (8th Cir. 2009). Nor do Plaintiffs provide any "people, documents, or sources that say [Tile Shop's] numbers were false." *Hutchinson Tech.,* 536 F.3d at 960 (affirming dismissal of complaint that had alleged, among other things, that the company's announced financial results were false). It is well-established that accurate reports of a company's past financial success are not actionable. *KV Pharmaceutical,* 679 F.3d at 985 (affirming dismissal where "KV's statements were accurate reports of its past financial success"); *Compellent,* 805 F. Supp. 2d at 736 (accurate statements about gross margin not misleading).

Plaintiffs appear to insinuate that, because Tile Shop's margins allegedly were "bloated" in the past, Tile Shop would be incapable of realizing those same margins going forward. This is just another way of saying that Tile Shop's accurate financial

---

[2] Plaintiffs point to a prior restatement by Tile Shop concerning its accounting for warrants it issued. This fact has nothing to do with Nishi or the alleged related-party transactions at issue. Plaintiffs do not even claim that this restatement is or ever was actionable under any legal theory. As with numerous other irrelevant "facts" pleaded in the Complaint, Plaintiffs included this in an attempt to unfairly tar Defendants.

reports guaranteed continued financial success. That is not a viable theory under the federal securities laws: accurate reports of financial results do *not* contain an implied prediction about the future. *See, e.g., Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993); *In re Convergent Technologies Sec. Litigation*, 948 F.2d 507, 513 (9th Cir. 1991); *Okla. Firefighters Pension & Ret. Sys. v. Capella Educ. Co.*, 873 F. Supp. 2d 1070, 1082 (D. Minn. 2012) (concerns about sustainability of financial success "amount to little more than the uncertainty about the future that any business faces"). Indeed, Tile Shop repeatedly warned investors in its SEC filings during the Class Period that there "can be no assurance that we will be able to continue to compete favorably," and that this "could have a material adverse effect on our planned growth and future results of operations." (Ex. 8, 2012 10-K, at 7; Ex. 13, 2013 10-K, at 7.)

Moreover, Tile Shop has not reported any meaningful decline in gross margins since Nishi was terminated and Tile Shop stopped doing business with BP. Rather, Tile Shop's reported gross margins in the quarter immediately preceding Gotham's "short report"—Q3 of 2013—were 70.1 %. (Ex. 12, Q32013 10-Q, at 4.) Tile Shop's most-recent reported gross margins—for Q1 of 2014— were essentially identical, at 69.8 %. (Ex. 14, Q12014 10-Q, at 4.) Even if Tile Shop's gross margins had experienced a material drop—which, obviously, they did not—that would not aid Plaintiffs. Tile Shop warned investors during the Class Period that it intended to take "an aggressive approach to capturing market share" which could impact "gross margins slightly in the short term" but "serves to enhance our long-term prospects." (Ex. 13, 2013 10-K, at 22.)

Plaintiffs' claims based upon public statements about Tile Shop's gross margins should be dismissed for failure to plead their falsity under the PSLRA.

**d. Statements about the strength of Tile Shop's supply chain and producer relationships are not actionable.**

Plaintiffs take issue with general positive statements Tile Shop made about the strength of its supply chain. (*E.g.*, Compl. ¶¶128, 137.) These types of statements are not actionable under the federal securities laws. As the Eighth Circuit has explained:

> [S]ome statements are so vague and such obvious hyperbole that no reasonable investor would rely upon them . . . . soft, puffing statements generally lack materiality because the market price of a share is not inflated by vague statements predicting growth. No reasonable investor would rely on these statements, and they are certainly not specific enough to perpetrate a fraud on the market.

*Parnes v. Gateway 2000*, 122 F.3d 539, 547 (8th Cir. 1997); *accord In re K-Tel Int'l Sec. Litig.*, 300 F.3d 881, 879 (8th Cir. 2002).

Statements that "[w]e believe that our long-term producer relationships … enable us to offer a broad assortment of high-quality products" (Compl. ¶137) and that Tile Shop has "long-standing relationships with producers" which "differentiate[s] us from our competitors" (*id.*), are the kinds of general positive statements that would not be considered material by a reasonable investor. *See, e.g., Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800, 808 (8th Cir. 2010) (statements that products were successful and demand was strong were immaterial puffery); *Hutchinson Tech.*, 536 F.3d at 960-961 (defendants' demand-related statements were too vague to be material); *In re Ford Motor Co. Secs. Litig.*, 381 F.3d 563, 570-71 (6th Cir. 2004) (statements about Ford's "quality" and "quality standards" were immaterial puffery); *Freedman v. Saint*

*Jude Medical, Inc.*, --- F.Supp.2d ---, 2014 WL 910326, at *9 (D. Minn. Mar. 10, 2014) (claims that company was "industry leader for quality and reliability," had "'proven' track record," were immaterial puffery); *Compellent*, 805 F. Supp. 2d at 735 (statements like "customers see the value proposition" of company's products were immaterial puffery). Hence, no securities fraud claim may be based upon them as a matter of law.

Equally important, Plaintiffs do not allege that any of Tile Shop's statements about its supply chain were false or misleading when made, or plead any facts suggesting their falsity. To the contrary, Plaintiffs repeatedly point out Tile Shop's extensive work abroad developing relationships with its suppliers. (*See, e.g.*, Compl. ¶¶8, 36, 40-43, 46.) These facts bolster, not contradict, Tile Shop's supply chain statements.

Similarly, the Complaint's allegations that Tile Shop did business with related parties do not render Tile Shop's statements about its supply chain false or misleading. As discussed previously, *supra* at 10, Tile Shop had no duty to disclose any transactions in which the Zhangs might have been involved. Moreover, it does not follow that because a company was familiar with its suppliers (by familial relationship, friendship, or otherwise), its supply chain was weak. And the Complaint contains no facts indicating that Tile Shop's supply chain is weak now that Nishi had been terminated and Tile Shop no longer does business with BP.

Because the Complaint fails to identify any actionable public statements about Tile Shop's supply chain relationships, or to plead facts showing their falsity, Plaintiffs' claims based upon those statements should be dismissed.

**e. Statements that Tile Shop does not control its suppliers are not actionable.**

Plaintiffs further allege that Tile Shop misled investors by telling them that it did not control its suppliers when, in reality, it did. (*See*, *e.g.*, Compl. ¶¶131, 140, 149, 155, 158.) Plaintiffs provide no reason why such control would be a bad thing and no plausible theory why it would matter to investors. *Capella*, 873 F. Supp. 2d at 1079; *K-Tel*, 300 F.3d at 897 (omitted information must have "actual significance" to shareholders). Beyond these deficiencies, Plaintiffs provide no facts whatsoever indicating that Tile Shop's statements were false. Specifically, Plaintiffs do not plead any facts indicating that Tile Shop actually controlled any of its suppliers, or what it did to control them.

Plaintiffs' allegations about undisclosed transactions involving Nishi do not indicate that Tile Shop "controlled" Nishi, BP, NHS, other vendors, or the transactions. Plaintiffs allege that BP operated at a "multimillion dollar loss and conceivably required significant funding" through an unidentified source. (Compl. ¶¶38-39.)[3] Plaintiffs also allege that Nishi received "kickbacks" from Tile Shop vendors. (¶¶64, 120.) But Plaintiffs never describe how or in what way the Tile Shop Defendants might have been involved in these activities, nor do they plead any facts indicating that Tile Shop funded BP or participated in the payments that Nishi allegedly received from Tile Shop vendors.

---

[3] The assertion that BP operated at a loss does not aid Plaintiffs' theory. Many companies operate at a loss, at least temporarily, for a variety of reasons. Plaintiffs provide no specific facts concerning how long BP allegedly operated at a loss, why it did so, the size of the losses, or who funded the alleged shortfall.

All Plaintiffs offer is unsupported innuendo, which is insufficient under the PSLRA and Rule 9(b). *See MathStar, Inc. v. Tiberius Capital II, LLC*, 712 F. Supp. 2d 870, 884 (D. Minn. 2010) (rejecting "unattributed, conclusory allegations" under Rule 9(b)). Indeed, Nishi's under-handed dealings imply a *lack* of control by the Tile Shop Defendants, not the opposite.

Thus, this category of statements, like the others, is not actionable.

**2. The Complaint Fails To Plead Facts Giving Rise To A Strong Inference Of Scienter.**

Plaintiffs' theory of scienter is that Rucker either willfully endorsed or recklessly failed to detect actions taken by his brother-in-law in China. He purportedly did so in order to sell some of his Tile Shop stock at an "inflated" price. These allegations do not raise a strong inference of scienter because there is a more plausible explanation: Nishi was a rogue employee.

Under the PSLRA, Plaintiffs must plead *sufficient specific* facts to give rise to a "strong" inference of scienter. *Tellabs v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 314 (2007). "Strong means strong….it is not sufficient for the facts alleged to give rise to a weak or plausible or even reasonable inference of scienter." *In re Ceridian Corp. Secs. Litig.*, 542 F.3d 240, 244 (8th Cir. 2008) (quotation marks omitted). Instead, the inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

Scienter, in turn, "requires a showing of reckless or intentional wrongdoing" that can be established "(1) from facts demonstrating a mental state

embracing an intent to deceive, manipulate or defraud; (2) from conduct which rises to the level of severe recklessness; or (3) from allegations of motive and opportunity." *Elam*, 544 F.3d at 928 (quotations omitted).

Under the PSLRA, Plaintiffs must "raise a strong inference of scienter for each defendant and with respect to each alleged misrepresentation." *Horizon Asset Mgmt. v. H&R Block, Inc.*, 580 F.3d 755, 761 (8th Cir. 2009); *see also K-Tel*, 300 F.3d at 896 ("taking each defendant individually" when analyzing the pleading of scienter). There is no such thing as "collective scienter" in this Circuit: Plaintiff may not mix-and-match the statements of one defendant, with the knowledge or motive of a second defendant, in an attempt to state a viable claim. *See In re Medtronic Inc., Sec. Litig.*, 618 F. Supp. 2d 1016, 1035 (D. Minn. 2009), *aff'd, Detroit Gen. Ret. Sys.*, 621 F.3d at 808.

**a. The Section 10(b) claim against Clayton must be dismissed for failure to plead scienter.**

The Complaint does not contain any facts indicating that Clayton acted with scienter. In fact, the Complaint mentions Clayton by name in only a few places. Clayton is not alleged to have had any knowledge of Nishi's unethical activities, nor is he alleged to have had any motive – such as selling stock – to commit a fraud. Accordingly, Clayton must be dismissed as a defendant on the Section 10(b) claim.

**b. The Section 10(b) claim against Rucker should be dismissed for failure to plead scienter.**

Plaintiffs attempt to plead scienter on the part of Rucker by speculating that he "must have known" about Nishi's activities because: (1) Rucker "maintained tight control over [Tile Shop's] business and operations" including its supplier relationships

(Compl. ¶3; *see also* ¶¶4, 36 (established entities in other countries), 40, 42, 47, 172, 176-178)); (2) Nishi is Rucker's brother-in-law and a Tile Shop employee (¶¶4, 44, 45, 53, 171); (3) of speculation from former employees ("FEs") (¶¶8, 36-47); and (4) Rucker allegedly lied in a divorce proceeding many years ago (¶¶69-82, 187). Plaintiffs also allege that Rucker was motivated to commit fraud in order to sell some of his shares at "artificially inflated prices." (¶10.) These allegations do not to give rise to a strong inference of scienter as to Rucker.

**(i) Allegations that Rucker "must have known" are insufficient.**

Courts in this Circuit routinely reject bald allegations that an officer "must have known" about a fraud at his company due to his position or responsibilities. *Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800, 808 (8th Cir. 2010) (rejecting "blanket assertions" that individual defendants "must have known" of allegedly significant facts); *Elam*, 544 F.3d at 929 (rejecting as insufficient allegation that company "must have known" of conflicting information due to sophistication of internal process for calculating such information).

Plaintiffs' allegations that Rucker "exercised complete control" over Tile Shop (*see* Compl. ¶172) do not change that conclusion. Generalized allegations of an executive's extensive involvement with a company's operations do not meet the heightened pleading standard for scienter under the PSLRA. *In re Patterson Cos.*, 479 F. Supp. 2d at 1032-33 (allegations as to defendants' "managerial roles and familiarity with the company" prove nothing about their knowledge of alleged fraud and are "exactly the

type of generalized allegations the court must disregard under the PSLRA") (citations omitted); *see also Oxford Asset Mgmt.*, 297 F.3d at 1192; *Goldstein v. MCI WorldCom*, 340 F.3d 238, 251-53 (5th Cir. 2003); *Rosenberg v. Gould*, 554 F.3d 962, 966 (11th Cir. 2009); *In re ArthroCare Corp. Secs. Litig.*, 726 F. Supp. 2d 696, 719-20 (W.D. Tex. 2010) (gathering cases).

Similarly, to the extent that the Complaint alleges that knowledge of all aspects of Tile Shop's supply chain should be imputed to Rucker because the supply chain is part of Tile Shop's "core operations," that allegation also is insufficient. The Eighth Circuit has expressly reserved decision whether to adopt the "core operations" presumption, *Elam*, 544 F.3d at 929, but several other circuits have rejected it. *Zucco Partners, LLC v. Digimarc Corp*, 552 F.3d 981, 1000 (9th Cir. 2009); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003). Moreover, the Eighth Circuit has said that if it were to adopt the "core operations" presumption, "we would at least require a showing that this information was known within the company at that time." *Elam*, 544 F.3d at 929. Where plaintiffs "merely assert that this information must have existed and must have been known" such "speculation is plainly insufficient." *Id.* at 930*; see also Detroit Gen. Ret. Sys.*, 621 F.3d at 808 (noting that no one individual had all of the pieces of information at the time the allegedly misleading statements were made and it was "not a situation where the falsity was so obvious that anyone familiar with the business of the company would have known the statements to be false at the time they were made").

This is precisely the brand of speculation pleaded in the Complaint. Plaintiffs allege that sourcing was "vital" to Tile Shop (Compl. ¶178), that Rucker played

an "integral role" in sourcing (¶173), and that, as a result, he "knew or should have known that Nishi was supplying product to Tile Shop" (¶¶8, 177-78). These conclusory allegations fail to create a strong inference that Rucker acted with scienter. Indeed, the Complaint never alleges that Rucker or any other Tile Shop employee (other than Nishi himself) ever had any *actual knowledge* of Nishi's ownership of BP or NHS, or of the payments that Nishi was receiving from vendors. Nor does the Complaint plead any facts as to how Rucker (or anyone else at Tile Shop) even could have come by that knowledge, especially in a country as notoriously opaque as China.

Thus, Plaintiffs' allegations about Rucker's position and responsibilities do not give rise to a strong inference that Rucker acted with scienter

**(ii) Allegations that Nishi was Rucker's brother-in-law are insufficient.**

The conclusory allegation that Rucker must have known about Nishi's activities because the two were brothers-in-law carries no weight under the PSLRA and is unpersuasive as a matter of human nature. Plaintiffs never explain the nature and dynamics of Rucker's relationship with Nishi. Family members generally, and in-laws in particular, can have a wide range of relationships, *i.e.*, good and bad, close and distant, trusting and distrustful. One cannot infer what Rucker did or did not know about Nishi's activities simply from the fact that they were in-laws. Certainly Plaintiffs never allege that Nishi told Rucker about his activities.[4] At bottom, Nishi's in-law relationship with

---

[4] Nishi's knowledge of his own bad acts cannot be imputed to Rucker or to Tile Shop. *See First Nat'l Bank v. Transamerica Ins. Co.*, 514 F.2d 981, 986 (8th Cir. 1975)

(Footnote continued)

Rucker is a neutral fact when it comes to assessing whether Plaintiffs have adequately pleaded scienter on the part of Rucker.

**(iii) <u>The information from the FEs is insufficient.</u>**

Plaintiffs include information from three anonymous FEs and one from FE Rodney Sill in an attempt to bolster their scienter allegations against Rucker. But "allegations of confidential sources" may be discounted or disregarded because they can be unreliable. *See Minneapolis Firefighters*, 641 F.3d at 1030 (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) ("It is hard to see how information from anonymous sources could be deemed "compelling' or how we could take account of plausible opposing inferences.")). Here, the information from the four FEs does not indicate scienter on Rucker's part, for at least three reasons.

First, none of the FEs worked for Tile Shop during the Class Period, or even during the period that Tile Shop has been a public company. Sill left Tile Shop in 2002, and the others left in 2007 and 2008. (*See* Compl. ¶¶37, 45, 46, 76 (Rucker bought out Sill (FE4) in 2002).) Thus, the FEs have no relevant information to offer concerning the allegations in the Complaint. *Gander Mountain*, 2006 WL 140670, at *10 (rejecting CWs' allegations where not based on personal knowledge and two CWs terminated employment prior to class period); s*ee also Ceridian*, 542 F.3d at 248 (confidential

---

("when the employer, officer or director's interest is adverse to the corporation, his knowledge is not imputed to it"); *First Dakota Nat'l Bank v. Saint Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 807 (8th Cir. 1993) (same); *see also In re Chinacast Educ. Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 175436, at *32-33 (C.D. Cal. Dec. 7, 2012) (noting that courts "routinely" invoke the so-called "adverse interest" principle "in refusing to impute scienter from the fraud of a rogue agent").

witness's allegations of wrongdoing prior to class period did not aid scienter allegations); *compare In re Nash Finch Co.*, 502 F .Supp. 2d 861, 874 (D. Minn. 2007) (crediting CW allegations where all of the CWs were employed by the company "during at least some portion of the Class Period").

Second, most of the information from the FEs is unremarkable. There is nothing nefarious about FE1's and FE3's information that Tile Shop – through Rucker, Nishi and others – went to countries such as Turkey and China to identify and develop new suppliers of tile. That was their job.[5]

Third, the rest of the FE information consists of bald assertions and rank speculation that carry no weight under the PSLRA. For example, FE1's assertion that it is "only logical that Rucker would have knowledge about Nishi's role and involvement in BP" (Compl. ¶44) is no less conclusory coming from a former employee than from Plaintiffs themselves. Similarly, the allegation that "FE2 was told by *other employees* … that Rucker was buying tile on the Company's behalf from Nishi" (¶45, emphasis added) is hearsay based upon the supposed knowledge of unknown others.

In sum, the FE information adds nothing to the scienter allegations against Rucker.

**(iv) <u>Allegations about Rucker's divorce are irrelevant.</u>**

Plaintiffs proffer allegations about Rucker's actions in a divorce proceeding from many years ago in an effort to paint Rucker as dishonest. Putting aside the fact that

[5] Nishi was Tile Shop's purchasing supervisor in fiscal years 2011, 2012, and 2013. (Compl. ¶169). One would expect him to help the Company purchase product.

divorce proceedings often arouse a special level of contentiousness, the Court should not draw any adverse interest from such allegations. Federal Rule of Evidence 404(b) forbids the use of one's prior bad acts to prove subsequent action in conformity with them. Moreover, the allegations do not bear upon the key issue here: whether, during the Class Period, Rucker was aware of Nishi's unethical activities.

**(v) Allegations about Rucker's motive are insufficient.**

Rucker was a founder and major shareholder of Tile Shop before Tile Shop became public. The fact that Rucker sold a portion of his stock in the Offerings does not give rise to a strong inference of scienter, because all corporate executives can be expected to sell stock. *McCall v. Scott*, 239 F.3d 808, 825, *amended in part by* 250 F.3d 997 (6th Cir. 2001); *Higginbotham*, 495 F.3d at 759 ("[m]anagers sell stock all the time"). As a result, "[i]nsider stock sales are not inherently suspicious." *Navarre*, 299 F.3d at 747. Rather, such sales become suspicious only if "the level of trading is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Id.*

Rucker's stock sales were not suspicious, for at least three reasons. First, the timing of the sales does not suggest fraud. Rucker is alleged to have sold 1,029,407 shares of Tile Shop stock in December 2012 for gross proceeds of $15,440,000, and 1,000,000 shares in June 2013 for gross proceeds of $24,250,000. (Compl. ¶16.) These sales all occurred months before revelation of the alleged fraud. The sales also were made at prices much lower ($15 and $24.25 per share) than Tile Shop's $30.31 per share high achieved on July 10, 2013. It would be illogical for someone intending to commit a

fraud to sell their stock too soon, or to continue to perpetuate the fraud for months after the supposed object of the fraud—selling their stock—had been accomplished. *See In re Hutchinson Tech. Inc. Secs. Litig.*, 502 F. Supp. 2d 884, 900 (D. Minn. 2007), *aff'd,* 536 F.3d 952 (8th Cir. 2008) (defendants' sales of stock before stock price reached its class-period high undercut an inference of scienter from such sales); *see also In re Copper Mt. Secs. Litig.*, 311 F. Supp. 2d 857, 875 (N.D.Cal. 2004) ("Had [defendants'] sales been calculated to reap the benefits of the undisclosed information, it is likely that at least some of the stock sales would have been at a price closer to the stock's maximum value.").

Second, Rucker retained the vast majority of his Tile Shop shares. The two sales represented less than 23% of Rucker's total holdings. Immediately following the second offering, Rucker still owned 6,924,250 Tile Shop shares. (Ex. 3, 2013 Reg. Statement, at 3.) Where an executive sells only a small portion of his holdings, inferences of scienter are weak at best. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).

Third, Rucker sold his shares through the Offerings, not on the open market. The market was informed of Rucker's intended sales in advance, via the filing of Registration Statements, and was provided with considerable information about Tile Shop in the Registration Statements. In the typical case where an inference of scienter might be drawn, the insider sells his shares privately in the market and then discloses the sales after-the-fact. There was no such disparity of information associated with Rucker's

stock sales in the Offerings, which negates any inference that the stock sales were suspicious.

**c. The Section 10(b) claim against Tile Shop should be dismissed for failure to plead scienter.**

Tile Shop's scienter (or lack thereof) is derivative of the scienter of its executive management. Having failed to plead facts giving rise to a strong inference that Clayton or Rucker acted with scienter, Plaintiffs likewise have failed to plead facts creating a strong inference that Tile Shop acted with scienter. The Complaint includes generic allegations about supposedly lax internal controls at Tile Shop, but those allegations do not add anything to the scienter analysis.

In order to create an inference of scienter from an allegation that Tile Shop lacked adequate internal financial controls, Plaintiffs must plead facts demonstrating not just that Tile Shop's internal controls were poor, but that the Tile Shop Defendants knew, at the time of the alleged fraud, that they were so poor as to be unreliable. *Ceridian*, 542 F.3d at 248; s*ee also In re Mirant Corp. Secs. Litig.*, 2009 U.S. Dist. LEXIS 789, at *93-94 (N.D. Ga. Jan. 7, 2009) (finding that defendant's awareness of deficiencies in company's internal controls do not lead to a strong inference of scienter and gathering cases). Put another way, Plaintiffs must show that the Tile Shop Defendants "acted culpably in designing those controls, assessing them, or certifying them under the Sarbanes-Oxley Act." *In re Watchguard Secs. Litig.*, 2006 WL 2927663, at *10 (W.D. Wash. Oct. 12, 2006).

Here, the Complaint does not even articulate *how* Tile Shop's internal controls were deficient at the time of the alleged fraud. *See Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir. 2008) (rejecting claim that controls "must have been weak" because a fraud actually occurred, where complaint failed to identify specific control deficiency). Nor does the Complaint allege facts indicating that, during the Class Period, Tile Shop's internal controls were intentionally deficient and the Tile Shop Defendants knew that. Instead, Plaintiffs refer to pre-Class Period problems with Tile Shop's internal controls, then assert that "it should come as no surprise that … the Officer Defendants consciously or recklessly disregarded—if not purposely concealed—the need to disclose" the related party transactions. (Compl. ¶92.) Yet, four paragraphs later, Plaintiffs admit that Tile Shop took numerous steps to remedy its pre-Class Period internal control problems, including hiring a new CFO, taking "steps to improve the Company's operations," and employing a new outside auditor.[6] (¶¶96, 97.) These actions actually mitigate against, not enhance, any inference of scienter. *Watchguard*, 2006 WL 2927663, at *10.

---

[6] Plaintiffs' claim that Tile Shop "churned through" three auditors in two years does nothing to improve their scienter theory. First, Plaintiffs do not link any change in auditors to any particular accounting failure or problem. Second, there is nothing unusual about a company switching from a regional accounting firm to a "big four" firm immediately prior to going public, as Tile Shop did when it switched from McGladrey LLP to Deloitte & Touche LLP for its 2011 fiscal year. Nor was the handover from Deloitte to another well respected firm, Ernst & Young, in April 2013 unusual, as Deloitte reported no disagreements with or deficiencies at Tile Shop. (Ex. 5, 4/15/13 Form 8-K); *see In re Maxwell Techs., Inc. Secs. Litig.*, -- F. Supp. 2d -- , 2014 WL 1796694, at *12-13 (S.D. Cal. May 5, 2014) (holding that even "noisy withdrawal" of auditor did not support strong inference of scienter).

Finally, allegations that a mandatory Sarbanes-Oxley certification was later proven to be inaccurate do not give rise to a strong inference of scienter. *Horizon*, 580 F.3d at 765-66. "Without allegations of particular facts demonstrating how the defendants knew" the certification was false, "a showing in hindsight that the statements were false does not demonstrate fraudulent intent." *Ceridian*, 542 F.3d at 248 (citation omitted). Because Plaintiffs have failed to plead facts indicating that the Tile Shop Defendants actually knew about Nishi's unethical activities when they signed the certifications, this attempt to plead scienter fails, too.

**d. <u>An inference of nonfraudulent intent is more plausible.</u>**

Plaintiffs' fraud theory appears to be that Nishi intentionally caused BP to export product to Tile Shop at below cost in order to increase Tile Shop's gross margins and share price. Not only is this theory unsupported by pleaded facts, it is implausible. Investors care about related-party transactions because of a concern that the related party might be benefitting at the corporation's expense, not the opposite. It would make no sense for Nishi to have participated in a conspiracy that could only cost him (as the owner of BP), not benefit him.

On the facts pleaded, it is more plausible to infer that Nishi was a rogue employee who operated in secret to enrich himself. The fact that Tile Shop fired Nishi and cut all ties with him almost immediately after uncovering the truth about Nishi's unethical activities supports an inference of nonfraudulent intent. (Ex. 1, 1/27/14 Press Release.)

Because the inferences to be drawn are more consistent with nonfraudulent intent, the Complaint does not meet the PSLRA's requirement for pleading scienter and should be dismissed. *See Ceridian*, 542 F.3d at 249 (affirming dismissal where opposing inference of nonfraudulent intent was more compelling than inference of fraud).

**B. <u>The 1933 Act Claims Should Be Dismissed.</u>**

Plaintiffs' 1933 Act claims based upon the 2013 Offering fail because, as explained in the Underwriters' Memorandum of Law in Support of Their Partial Motion To Dismiss ("Underwriters' Memorandum"), Plaintiffs lack standing to sue based upon that Offering. Standing would exist only if the Plaintiffs were able to plead facts indicating that they purchased Tile Shop shares "pursuant and/or traceable to" the Registration Statement for the 2013 Offering, and this they cannot do. For the reasons stated in the Underwriters' Memorandum, which the Tile Shop Defendants adopt, Plaintiffs' 1933 Act claims based upon the 2013 Offering should be dismissed.

Plaintiffs' Section 12(a)(2) claim based the 2012 Offering should also be dismissed because Plaintiffs cannot establish an essential element of the claim: that Plaintiffs have been damaged as a result of the 2012 Offering. As explained in the Underwriters' Memorandum, whose arguments and authorities the Tile Shop Defendants adopt, a shareholder's remedy under Section 12(a)(2) is rescissory damages. But Plaintiffs are not entitled to receive rescissory damages because they have had numerous opportunities since the first complaint in this action was filed to sell their shares in the market at a price higher than the 2012 Offering price of $15 per share. Plaintiffs' Section 12(a)(2) claim based upon the 2012 Offering therefore fails.

Finally, Plaintiffs' 1933 Act claims fail (except as to the Nishi-omission claim) for failing to identify actionable misstatements or omissions, or to plead facts showing that Tile Shop's statements were false when made

## C. The Controlling Person Claims Should Be Dismissed.

Count III alleges "controlling person" claims against Rucker, Clayton, and TSI under Section 15 of the 1933 Act,[7] and Count V alleges "controlling person" claims against the same defendants under Section 20(a) of the 1934 Act.[8] To the extent Plaintiffs have not properly pleaded claims under Sections 11 and 12(a)(2) of the 1933 Act or under Section 10(b) of the 1934 Act, their Section 15 and 20(a) claims must be dismissed as well. *Hutchinson Tech.*, 536 F.3d at 961 (as to 1934 Act); *Gart v. Electroscope, Inc.*, 24 F. Supp. 2d 969, 975 (D. Minn. 1998) (as to 1933 Act); *see also Farley v. Henson*, 11 F.3d 827, 835 (8th Cir. 1993) (same test for control person liability applies to both federal acts).

# IV. CONCLUSION

For the foregoing reasons, all claims in the Consolidated Amended Complaint, except Count I insofar as it relates to the December 2012 Offering, should be

---

[7] Section 15 imposes joint and several liability on any "person who … controls any person liable" for violating the 1933 Act, "unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability … is alleged to exist." 15 U.S.C. §77(o).

[8] Section 20(a) imposes joint and several liability on any "person who, directly or indirectly, controls any person liable" for securities fraud under the 1934 Act, "unless the controlling person acted in good faith and did not directly or indirectly induce" the violation. 15 U.S.C. §78t(a).

dismissed as against defendants Tile Shop Holdings, Inc., Robert Rucker, The Tile Shop, Inc., and Timothy Clayton.

Date: July 25, 2014.

Respectfully submitted,

**FAEGRE BAKER DANIELS LLP**

/s/ Wendy J. Wildung
Wendy J. Wildung (#117055)
Justin P. Krypel (#0389385)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000

*Attorneys for Defendants Tile Shop Holdings, Inc., Robert A. Rucker, The Tile Shop, Inc., and Timothy C. Clayton*