**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| BEAVER COUNTY EMPLOYEES' RETIREMENT FUND; ERIE COUNTY EMPLOYEES' RETIREMENT SYSTEM; and LUC DE WULF, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 14-cv-786 ADM/TNL |
| Plaintiffs, | : | CLASS ACTION |
| vs. | : | |
| TILE SHOP HOLDINGS, INC.; ROBERT A. RUCKER; THE TILE SHOP, INC.; TIMOTHY C. CLAYTON; PETER J. JACULLO III; JWTS, INC.; PETER H. KAMIN; TODD KRASNOW; ADAM L. SUTTIN; WILLIAM E. WATTS; ROBERT W. BAIRD & CO., INC.; CITIGROUP GLOBAL MARKETS INC.; CJS SECURITIES, INC.; HOULIHAN LOKEY CAPITAL, INC.; PIPER JAFFRAY & CO.; SIDOTI & COMPANY, LLC; TELSEY ADVISORY GROUP LLC; and WEDBUSH SECURITIES, INC., | : | |
| Defendants. | : | |

**UNDERWRITER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiffs Luc De Wulf, Erie County Employees' Retirement System ("Erie County"), and Beaver County Employees' Retirement Fund ("Beaver County") (collectively, "Plaintiffs") have brought an action arising out of two distinct public offerings of shares—one in December 2012, and the other in June 2013—of Tile Shop Holdings, Inc. ("Tile Shop"). Plaintiffs' claims against the Underwriter Defendants (as defined on p. 5 below) arise out of Sections 11 and 12(a)(2) of the Securities Act of 1933. Those statutes reach only shares purchased in an initial or secondary offering of shares, or shares that are demonstrably "traceable" to such an offering.

Plaintiffs' Consolidated Amended Complaint ("CAC") makes clear that Plaintiffs do not have standing to sue as to the second of those two offerings, which was consummated in June 2013. Plaintiffs did not purchase their shares in the offering itself. The pleaded facts reveal that Plaintiffs will not be able to establish that any shares they purchased subsequent to the June 2013 were "traceable" to that offering. Accordingly, all claims arising out of the June 2013 Offering should be dismissed as against the Underwriter Defendants.

As to the remaining offering in December 2012, Plaintiffs' claims under Section 12(a)(2) should be dismissed because Plaintiffs failed to mitigate their damages as a matter of law. Plaintiffs' Section 12(a)(2) claim is one for rescission; they seek to recover the $15.00 price that they paid in the December 2012 Offering. But the record is clear that Plaintiffs could have sold their shares for more than the $15.00 offering price after they filed their complaint. Thus, subsequent to filing their complaint, Plaintiffs

made an investment decision to speculate on Tile Shop's share price, even though they could have realized a price in excess of the rescissionary damage amount that they purport to seek in this lawsuit. On that basis, Plaintiffs' Section 12(a)(2) claim should be dismissed as to the December 2012 Offering.

## SUMMARY OF ALLEGED FACTS[1]

Tile Shop, headquartered in Minnesota, is a specialty retailer of manufactured and natural stone tiles and other materials. (CAC ¶ 2.) It was co-founded in 1985, by Defendant Robert A. Rucker, who is the company's Chief Executive Officer and President. (CAC ¶ 3.) Over the past thirty years in business, Tile Shop has expanded to operate 80 stores in 25 states. (CAC ¶ 15.) In August 2012, Tile shop became a publicly traded company under symbol TTS, listed on the NASDAQ. (CAC ¶ 15; Schwartz Decl. Exh. 1 at 3-4.)[2]

### A. The December 2012 Offering

In late 2012, certain of Tile Shop's stockholders, including certain directors and members of its management team (the "Selling Shareholders") decided to sell some of their holdings to the public. To that end, on or about November 28, 2012, Tile Shop

[1] For the purposes of this motion to dismiss, the Underwriter Defendants assume, as they must, that the facts alleged in the CAC are true. In doing so, the Underwriter Defendants do not concede the truth of any such allegations and specifically reserve their rights to contest the accuracy of any of the facts alleged in the CAC. Should this case proceed, the Underwriter Defendants intend to establish that their conduct was fully compliant with the federal securities laws, and that there is no basis for a finding of liability against any of the Underwriter Defendants.

[2] References to the "Schwartz Decl." are to the Declaration of Jed M. Schwartz, dated July 25, 2014, filed with this memorandum of law.

filed a Form S-1 registration statement with the United States Securities and Exchange Commission ("SEC"). Tile Shop filed an amendment to that registration statement and a preliminary prospectus on or about December 10, 2012. (CAC ¶ 103.) The SEC declared the registration statement effective on December 12, 2012, and Tile Shop filed a final prospectus on December 13, 2012. (*Id.* ¶¶ 103-04; Schwartz Decl. Exh. 1.)

Defendants Citigroup Global Markets Inc. ("CGMI") and Robert W. Baird & Co. Incorporated ("Baird") acted as joint book-running managers on this December 2012 offering (the "December 2012 Offering"). (Schwartz Decl. Exh. 1 at 82.) Defendants Telsey Advisory Group LLC ("Telsey"), Wedbush Securities Inc. ("Wedbush"), Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), and Sidoti & Company, LLC ("Sidoti") acted as additional underwriters. (*Id.*)

The December 2012 Offering was priced at $15.00 a share. (CAC ¶ 104.) Tile Shop did not offer any shares to the public in connection with the December 2012 Offering. (CAC ¶ 104.) Rather, all of the shares sold in the December 2012 Offering were shares already owned by the Selling Shareholders. (CAC ¶¶ 103-05.) Prior to the December 2012 Offering, Tile Shop had approximately 38 million shares outstanding. (Schwartz Decl. Exh. 1 at 5.) The December 2012 Offering authorized the issuance of an additional 5.175 million shares. (CAC ¶ 104.)

Lead Plaintiffs allege that they purchased shares in the December 2012 Offering (CAC ¶ 208), but it is clear that Plaintiff De Wulf, whose only purchase occurred over three months later, did not purchase in the December 2012 Offering. (Schwartz Decl. Exh. 3 at 7 of 8.)

### B. The June 2013 Offering

On or about May 24, 2013, Tile Shop filed a new Form S-1 registration statement with the SEC. (CAC ¶ 106.) Tile Shop amended the registration statement on June 3, and the SEC declared it effective on June 4, 2013. (CAC ¶ 106.) Tile Shop filed its final prospectus on June 5, 2013, and priced the June 2013 Offering at $24.25 a share. (CAC ¶ 107; Schwartz Decl. Exh. 2.) The June 2013 Offering postdated the December 2012 Offering by almost six months.

CGMI and Baird, as well as Defendant Piper Jaffray & Co. ("Piper Jaffray"), each acted as joint book-running managers for the June 2013 Offering, and Wedbush, Telsey, and CJS Securities, Inc. ("CJS") each acted as additional underwriters (CGMI, Baird, Piper Jaffray, Telsey, Wedbush, CJS, Houlihan Lokey, and Sidoti are collectively referred to as the "Underwriter Defendants"). (Schwartz Decl. Exh. 2 at 78.) As with the December 2012 Offering, Tile Shop did not offer any shares to the public; all of the shares sold in the June 2013 Offering were shares already owned by the Selling Shareholders. (CAC ¶¶ 106-08.)

None of the Plaintiffs purchased Tile Shop shares in the June 2013 offering. (Schwartz Decl. Exh. 3.)

### C. Certain Lead Plaintiffs Purchase in the December 2012 Offering But None Purchase in the June 2013 Offering

In connection with their motion to be appointed as Lead Plaintiffs, each of the Plaintiffs filed with the United States District Court for the Southern District of New York a certification setting forth all of their transactions in Tile Shop stock (the

"Certifications"). (Schwartz Decl. Exh. 3.) According to the Certifications, which are incorporated by reference into the CAC (*see* CAC ¶ 14), Plaintiff De Wulf did not purchase in either offering. (Schwartz Decl. Exh. 3 at 7 of 8.) De Wulf made his sole purchase of Tile Shop stock on March 21, 2013, three months after the December 2012 Offering, and three months ***before*** the June 2013 Offering. (*Id.*) According to the same filing, Plaintiff De Wulf sold his entire position in Tile Shop on December 13, 2013 at a price of $16.20.

The Certifications also show that Plaintiffs Beaver County and Erie County both purchased in the December 2012 Offering, but not the June 2013 Offering. Plaintiff Beaver County purchased 1,305 shares of Tile Shop on December 13, 2012 (the offering date for the December 2012 Offering) at $15.00 a share (the offering price). (*Id.*) Similarly, Plaintiff Erie County purchased 1,247 shares of Tile Shop on December 13, 2012 at $15.00 a share. (*Id.*) Neither, however, purchased shares on June 5, 2013, the June 2013 Offering date. In fact, Beaver County made a purchase on May 20, 2013, and then not again until November 7, 2013. (*Id.*) Erie County made a purchase on April 25, 2013, and then not again until October 31, 2013. (*Id.*)

### D. Gotham City Report

On November 14, 2013, Gotham City Research LLC issued a 58-page report on Tile Shop (the "Gotham Report"). (CAC ¶ 159.) The Gotham Report accused Tile Shop of using undisclosed related-party transactions to overstate its earnings by overstating its inventories. (*Id.* ¶¶ 159-61.) Specifically, the Gotham Report alleged that Tile Shop used its relationship with a supplier, Beijing Pingxiu, which was owned by a

Tile Shop employee who was also the brother-in-law of Tile Shop CEO, to increase Tile Shop's inventory and to artificially lower its costs. (*Id.*) The Gotham Report concluded that Tile Shop's earnings for the previous twelve months were overstated by over 200%. (*Id.*) Tile Shop's shares closed at $12.95 a share on November 14, 2013, down from the opening price of $21.18 a share. (Schwartz Decl. Exh. 4.)

On many occasions since the commencement of this action, Tile Shop shares have traded at prices above the $15.00 December 2012 Offering price. Thus, Plaintiffs could have sold their shares (but have failed to) on a number of days above the $15.00 offering price they are seeking to obtain in this action.

## PROCEDURAL HISTORY

On November 15, 2013, Jeffrey Lagendyk filed a class action complaint against Defendants Rucker, Clayton, and Tile Shop (the "Lagendyk Complaint"). (Dkt. #1, *Lagendyk v. Rucker*, 13 Civ. 8160 (S.D.N.Y. Nov. 15, 2013).) The Lagendyk Complaint, which was filed in the United States District Court for the Southern District of New York, asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5. (*Id.*) On November 21, 2013, Craig Puerta filed a separate class action complaint naming Rucker, Clayton, and Tile Shop as defendants, as well as adding certain others as defendants (the "Puerta Complaint"). (Dkt. #1, *Beaver County Employees' Retirement Fund. v. Tile Shop Holdings, Inc.*, 14-CV-786 (ADM/TNL) (D. Minn. Nov. 21, 2013).) As with the Lagendyk Complaint, the Puerta Complaint was limited to violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5. (*Id.*) Neither complaint named the

Underwriter Defendants as parties, and neither asserted claims under the Securities Act of 1933 (the "Securities Act").

The current Lead Plaintiffs were appointed on February 13, 2014. (Dkt. #35.) By order dated April 18, 2014, Lead Plaintiffs were granted permission to file an amended complaint. (Dkt. #55.) They filed the CAC on May 23, 2014. (Dkt. #66.) The CAC for the first time added the Underwriter Defendants as parties and asserted claims under Sections 11 and 12(a)(2) of the Securities Act.

Count I of the CAC alleges that the registration statements associated with the December 2012 and June 2013 Offerings were inaccurate and misleading, in violation of Section 11 of the Securities Act. Plaintiffs allege that they have been damaged because the "value of Tile Shop common stock has declined substantially" due to Defendants' actions. (CAC ¶ 209.)

Count II of the CAC alleges that certain Defendants, including the Underwriter Defendants, "sold Tile Shop stock to Plaintiffs and other members of the [Securities] Act Class" by means of defective prospectuses, in violation of Section 12(a)(2) of the Securities Act. (CAC ¶ 213.) Lead Plaintiffs seek to rescind their purchases and to recover the consideration paid for their shares. (CAC ¶ 217.)

## ARGUMENT

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead facts "showing that [it] is entitled to relief." To survive a motion to dismiss for failure to state a claim, a complaint must allege facts that "raise a right to relief above the speculative

level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court must first identify those factual allegations in a complaint that are nothing more than "legal conclusions" or "naked assertions," and give those allegations no weight. *Id.* Then, the court must determine whether the well-pleaded, non-conclusory allegations show that defendants' liability is more than a "sheer possibility," but that such liability is plausible. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendants' liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" fails to satisfy Rule 8(a)'s pleading requirements, and the complaint should be dismissed. *Id.* at 679.

A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *In re K-Tel Int'l Inc., Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2001); *In re Patterson Cos., Inc. Sec. Litig.*, 479 F. Supp. 2d 1014, 1021 (D. Minn. 2007). A court may also consider publicly available stock prices without converting a Rule 12(b)(6) motion into one for summary judgment. *Coulter v. Morgan*

*Stanley & Co.*, 936 F. Supp. 2d 306, 314 (S.D.N.Y. 2013) (citing *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000)).

## II. PLAINTIFFS DO NOT HAVE STANDING TO PURSUE CLAIMS UNDER SECTIONS 11 AND 12(A)(2) OF THE SECURITIES ACT ARISING FROM THE JUNE 2013 OFFERING

Plaintiffs' claims arising from the June 2013 Offering should be dismissed because none of the Plaintiffs purchased shares in that offering.

To have Article III standing, a plaintiff must have suffered an injury in fact, which is actual or imminent, as well as concrete and particularized. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 368 (S.D.N.Y. 2011). "Because a plaintiff cannot claim a personal injury in connection with a security he did not purchase, he 'lacks standing to sue on claims arising from . . . offerings which he did not purchase.'" *Id.* (quoting *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653, 2010 WL 1473288, at *3 (S.D.N.Y. Mar. 29, 2010)).

Similarly, a plaintiff lacks statutory standing to bring claims under Section 11 and 12 of the Securities Act if that plaintiff did not purchase shares in the offering challenged. Section 11 of the Securities Act provides, in pertinent part:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, ***any person acquiring such security*** . . . may, either at law or in equity, in any court of competent jurisdiction, sue.

15 U.S.C. § 77k (emphasis added). Thus, to recover on a claim under Section 11, a plaintiff must have either purchased in the offering at issue, or be able to "trace"



6379567v1

securities to the particular registration statement at issue. *Lee v. Ernst & Young, LLP*, 294 F.3d 969, 977-78 (8th Cir. 2002) (holding that "tracing is a requirement of aftermarket purchaser standing under § 11 [of the Securities Act] in this circuit"). As explained below, the CAC's allegations establish that Plaintiffs will not be able to satisfy Section 11's tracing requirement.

Section 12(a)(2) is even more restrictive; it provides a remedy solely for persons who purchased a security in an initial public offering. *See* 15 U.S.C. § 77*l*(a)(2) (stating that any person who "offers or sells a security . . . shall be liable . . . ***to the person purchasing such security from him*** . . . .") (emphasis added). The law is well settled that aftermarket purchases do not fall within the purview of Section 12(a)(2). *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 684 (3d Cir. 1991) ("We believe that the language and the legislative history of section 12(2) demonstrate that Congress did not there intend to protect buyers in the aftermarket, and we hold that section 12(2) provides a remedy to buyers of securities only in the initial distributions."); *Spiegel v. Tenfold Corp.*, 192 F. Supp. 2d 1261, 1268 (D. Nev. 2002) ("Accordingly, the courts interpret § 12(a)(2) as having an express privity requirement, giving a cause of action only to individuals who purchase securities directly from a person who sells the securities by means of a prospectus."); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *25 (S.D.N.Y. Sept. 28, 2012) ("Moreover, liability pursuant to § 12(a)(2), unlike § 11, may attach only when plaintiffs purchased their shares directly in the initial public offering, and not in the so-called 'aftermarket.'"). In sum, only investors who purchased in or can trace their

shares to the June 2013 Offering have standing under Section 11, and only investors who actually purchased in the June 2013 Offering have standing under Section 12(a)(2).

Here, none of the Plaintiffs purchased in or can trace their shares to the June 2013 Offering, with the consequence that no Plaintiff has standing to bring claims arising out of the June 2013 Offering. *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 481 (S.D.N.Y. 2010) ("Here, therefore, because the named plaintiffs only purchased securities in nineteen offerings, any claim based on the other sixty-five offerings must be dismissed with prejudice."); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010) ("Although plaintiffs have alleged that the Prospectuses and Prospectus Supplements contained some similar false statements or omissions, the case law is clear that a named plaintiff has standing under Section 11 only as to the documents that governed his own purchase of securities."); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 769 (1st Cir. 2011) (holding that plaintiffs did not have standing to assert claims on behalf of purchases of trust securities that the plaintiffs themselves did not own, and stating that "here certain defendants, including six of the eight trusts named as defendants, are not liable to the named plaintiffs on *any* claims").

According to the Certifications, incorporated by reference into the CAC, Lead Plaintiff Luc De Wulf's sole purchase of Tile Shop shares occurred in March 2013, before the June 2013 Offering. Neither of the other Lead Plaintiffs purchased shares during June 2013. Erie County purchased shares in April 2013, but did not purchase again until October 31, 2013. (Schwartz Decl. Exh. 3 at 6 of 8.) Beaver County

purchased shares in May 2013, but did not purchase shares again until November 7, 2013. (*Id.* at 4 of 8.) Thus, Lead Plaintiffs' Section 12(a)(2) claims fail with respect to the June 2013 Offering because Section 12(a)(2) requires that a plaintiff must have purchased shares in the offering as to which he is suing. *E.g.*, *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *25.

The claims of Erie County and Beaver County also must fail under Section 11 as to the June 2013 Offering. Plaintiffs conclusorily allege that they "acquired Tile Shop shares pursuant and/or traceable to the Registration Statements." (CAC ¶¶ 1, 188, 208.) But Plaintiffs make no factual allegations to support their bald allegation of traceability. And given the way the securities markets function, unless a company has only had a single offering of its shares when a plaintiff has purchased shares in the aftermarket, there is typically no way for that plaintiff to establish whether it has purchased shares that can be traced to a particular offering. As the Ninth Circuit noted in *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1107 (9th Cir. 2013), "experience and common sense tell us that when a company has offered shares under more than one registration statement, aftermarket purchasers usually will not be able to trace their shares back to a particular offering." *See Feyko v. Yuhe Int'l, Inc.*, No. CV 11-05511, 2013 WL 3467067, at *2 (C.D. Cal. July 10, 2013) (noting that it is "often impossible" to trace shares back to the relevant offering, and "conclusory allegations in the complaint that the shares are traceable will not suffice"); *see also In re Bank of Am. Corp. Sec.*, 281 F.R.D. 134, 147 (S.D.N.Y. 2012) ("where shares issued under an

allegedly defective registration statement are publicly traded alongside shares already in the secondary market from prior offerings, tracing is considerably more complicated").

Here, at the time of the Erie County's and Beaver County's October and November 2013 aftermarket purchases, Tile Shop's shares had been trading on NASDAQ since at least August 2012 (CAC ¶ 84-85), and Tile Shop had made an additional public offering in December 2012. Plaintiffs' allegation that the shares they purchased are traceable to the June 2013 Offering is just a conclusory allegation unsupported by pleaded facts. *See Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 901 (4th Cir. 2014) ("At best, the allegations are merely consistent with the possibility that [a plaintiff] purchased his securities" in a public offering, and holding that in such circumstances, "the complaint 'stops short of the line between possibility and plausibility'") (quoting *Twombly*, 550 U.S. at 556); *Krim v. PCOrder.com*, 402 F.3d 489, 496-97 (5th Cir. 2005) (declining to expand standing under Section 11 to "statistical tracing," where plaintiffs demonstrated that any one share of stock chosen at random in aftermarket had a 90% chance of being traced to the relevant offering).

In sum, because Plaintiffs have pleaded no facts showing that they acquired Tile Shop shares issued in the June 2013 Offering, they have neither constitutional nor statutory standing to pursue claims arising from that offering, and the CAC must be dismissed with respect to those claims. In addition, because two of the Underwriter Defendants, CJS and Piper, solely participated in the June 2013 Offering, there is no basis for a claim against them, and they must be dismissed from this case entirely.

## III. PLAINTIFFS' 12(A)(2) CLAIMS WITH RESPECT TO THE JUNE 2013 OFFERING MUST ALSO BE DISMISSED BECAUSE THE CAC FAILS TO ALLEGE FACTS SHOWING THAT THE UNDERWRITER DEFENDANTS SOLD TILE SHOP SHARES TO PLAINTIFFS

To state a claim for a breach of Section 12(a)(2) of the Securities Act, a plaintiff must allege facts showing that, among other things, he or she bought securities that the defendant sold or offered to sell. 15 U.S.C. § 77*l*. A "seller" within the meaning of Section 12(a)(2) is limited to a person who (1) passes title of the security to the plaintiff or (2) "successfully solicits the purchase of securities, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *In re Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 635 (3d Cir. 1989) (citing *Pinter v. Dahl*, 486 U.S. 622, 647 (1988)). Importantly, Section 12(a)(2) "limits the imposition of liability to 'the buyer's immediate seller,' and thus, 'a buyer cannot recover against his seller's seller.'" *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1215 (1st Cir. 1996) (quoting *Pinter*, 486 U.S. at 643 n.21).

As set forth above in Section II, the Certifications show none of the Lead Plaintiffs purchased shares in the June 2013 Offering, and therefore did not take title of any shares from the Underwriter Defendants. In fact, neither Erie County nor Beaver County purchased any Tile Shop shares between May 20 and October 31, 2013. Thus, even if Lead Plaintiffs had successfully pleaded that they purchased shares traceable to the June 2013 Offering (which they did not), the Underwriter Defendants would be, at most, the type of "seller's seller" not included within the ambit of Section 12. *See Shaw*, 82 F.3d at 1215. Moreover, Plaintiff De Wulf's sole purchase of Tile Shop shares

occurred over one month before the June 2013 Offering, making it impossible for any Underwriter Defendant to have sold shares in June 2013 Offering to him.

Finally, the CAC's conclusory allegations that "Tile Shop, the Officer Defendants, TSI, JWTS, Inc. and the Underwriter Defendants promoted and sold Tile Shop stock to Plaintiffs and other members" of the putative class and that "[u]pon information and belief, various Underwriter Defendants participated in road shows to publicize the Offerings and solicit investors to participate in purchasing shares of stock sold therein" (CAC ¶¶ 35, 213), do not adequately allege that any particular underwriter solicited Plaintiffs to purchase Tile Shop shares. At most, Plaintiffs' allegations are "merely consistent with" potential liability for one or more Defendants, but the allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 662.

## IV. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED DAMAGES RECOVERABLE UNDER SECTION 12(A)(2) OF THE SECURITIES ACT

The sole remedy for a violation of Section 12(a)(2) is rescission, or if the investor has already sold his or her shares, rescissory damages. *See* 15 U.S.C. § 77*l*(a)(2) (purchasers of securities offered or sold in violation of Section 12(a)(2) may sue "to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security"). The goal of this rescissory remedy is to restore a plaintiff to the position in which he or she would have been without purchasing the securities at issue.

Since November 15, 2013, the date the first complaint in this litigation was filed, Lead Plaintiffs have had ample opportunity to sell their shares at a price greater than the $15.00 at which the Tile Shop shares were offered in December 2012. As shown in Exhibit 4 to the accompanying Declaration of Jed M. Schwartz, dated July 25, 2014, Tile Shop shares traded in excess of the $15.00 offering price on at least 79 business days subsequent to the first complaint's filing, and traded in excess of $18.00 on 13 of these trading days. That Plaintiffs have not accomplished the rescission remedy that they are seeking is a decision that they affirmatively made for themselves by not selling their shares for $15.00 or more.

Instead, with full knowledge of the allegations contained in the Gotham Report, Lead Plaintiffs have repeatedly made an investment decision to hold their shares rather than to sell them at a time when they could have recouped their $15.00 purchase price (and even gained in the sale). *See, e.g., Westinghouse Elec. Corp. v. '21' Int'l Holdings, Inc.*, 821 F. Supp. 212, 220 (S.D.N.Y. 1993) (noting plaintiff's continued "investment decision to play the market" by declining to sell shares even after learning of alleged misrepresentations). This course of action allows Lead Plaintiffs to gain all of the potential upside of an increase in the Tile Shop stock during the course of the litigation, while using this litigation as an insurance policy to place a floor on their downside risk. Section 12(a)(2) of the Securities Act was not intended to allow plaintiffs to gamble at a defendant's expense, and the Court should exercise its equitable powers and deny relief to Lead Plaintiffs. *See, e.g., Siemers v. Wells Fargo & Co.*, No. C 05-04518, 2007 WL 1456047, at *5 (N.D. Cal. May 17, 2007) (entering judgment for defendants because

plaintiff could have sold the securities at issue for "a 10% profit if he had sold the fund on the day the action commenced, or a 21% profit if he sold recently"); *Ong v. Sears, Roebuck & Co.*, No. 03 C 4142, 2005 WL 2284285, at *16 (N.D. Ill. Sept. 14, 2005) (dismissing Section 12(a)(2) claim because plaintiff would "suffer a loss by tendering back its . . . notes in exchange for the purchase price"); *Merzin v. Provident Fin. Grp. Inc.*, 311 F. Supp. 2d 674, 684 (S.D. Ohio 2004) (dismissing certain plaintiffs' Section 12(a)(2) claims because the then-current price of the securities in question was over $30.00 a share, but plaintiffs had paid only $25.00 for their holdings); *see also Gannett Co. v. Register Pub. Co.*, 428 F. Supp. 818, 828 (D. Conn. 1977) (without a rule requiring prompt rescission, "'[a] party could otherwise sit back without notification to the wrongdoer and, within the allowable period to sue, watch the market go up or down, thereby speculating on the success or value at the total risk of the wrongdoer'" (quoting *Myzel v. Fields*, 386 F.2d 718, 740-41 n.15 (8th Cir. 1967)).

## V. WITH ONE EXCEPTION, PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD THAT THE RELEVANT REGISTRATION STATEMENTS CONTAINED FALSE STATEMENTS

A material misstatement in or material omission from a registration statement is a required element under both Sections 11 and 12(a)(2). *Gart v. Electroscope, Inc.*, 24 F. Supp. 2d 969, 971 (D. Minn. 1998). For the purposes of this motion only, the Underwriter Defendants accept that Plaintiffs have adequately alleged that certain related-party transactions should have been disclosed by Tile Shop in the relevant registration statements pursuant to Item 404(a) of Regulation S-K, 17 C.F.R. § 229.404. As explained more fully in the Tile Shop Defendants' Memorandum in

Support of Motion to Dismiss, Plaintiffs have failed to plead facts showing that the other alleged misstatements were false or misleading, and the Underwriter Defendants hereby incorporate those arguments in to this memorandum of law, and join in the Tile Shop Defendants' motion.[3]

[3] Although the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act apply to the Section 10(b) claims asserted against the Tile Shop Defendants, Plaintiffs' factual allegations also fail to show a plausible claim to relief as required by Rule 8(a).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Count II of the Consolidated Amended Complaint in its entirety with respect to the Underwriter Defendants, and should dismiss Count I with respect to claims against the Underwriter Defendants that arise from the June 2013 Offering.

Dated: July 25, 2014

**BRIGGS AND MORGAN, P.A.**

*/s/ Frank A. Taylor*
FRANK A. TAYLOR
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 977-8400
FTaylor@Briggs.com
*Local Counsel to Underwriter Defendants*

**MILBANK, TWEED, HADLEY & McCLOY LLP**
SCOTT A. EDELMAN (*pro hac vice*)
JED M. SCHWARTZ (*pro hac vice*)
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
sedelman@milbank.com
jschwartz@milbank.com
*Counsel to Underwriter Defendants*