## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BEAVER COUNTY EMPLOYEES' RETIREMENT FUND; ERIE COUNTY EMPLOYEES' RETIREMENT SYSTEM; and LUC DE WULF, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TILE SHOP HOLDINGS, INC.; ROBERT A. RUCKER; THE TILE SHOP, INC.; TIMOTHY C. CLAYTON; PETER J. JACULLO III; JWTS, INC.; PETER H. KAMIN; TODD KRASNOW; ADAM L. SUTTIN; WILLIAM E. WATTS; ROBERT W. BAIRD & CO. INCORPORATED; CITIGROUP GLOBAL MARKETS INC.; CJS SECURITIES, INC.; HOULIHAN LOKEY CAPITAL, INC.; PIPER JAFFRAY & CO.; SIDOTI & COMPANY, LLC; TELSEY ADVISORY GROUP LLC; and WEDBUSH SECURITIES, INC.,<br><br>Defendants. | Civil No. 0:14-cv-00786-ADM-TNL |

## THE TILE SHOP DEFENDANTS' MEMORANDUM
## IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Plaintiffs seek to expand the scope of discovery, with little justification.[1] They ask for two additional years' worth of documents from six existing custodians, as well as documents from four new custodians.  Plaintiffs make these requests without any actual knowledge that they need the documents they seek.  Tile Shop has already agreed to provide Plaintiffs with a wide range of discovery in response to their already extremely broad discovery requests.  As a result, Plaintiffs have obtained hundreds of thousands of pages of documents and admissions of many of the facts for which they now seek documentary evidence.  And, Plaintiffs will be receiving thousands of additional documents in the coming weeks.

Plaintiffs' Motion should be denied because it is unnecessary, seeks documents from irrelevant custodians and time periods, and, if granted, would impose a burden on Tile Shop disproportionate to Plaintiffs' need and the parameters of this case.

## FACTUAL BACKGROUND

### I.   DOCUMENT DISCOVERY TO DATE

#### a.   Plaintiffs' Exhaustive Discovery Requests.

Plaintiffs' strategy appears to be to obtain every single piece of paper they possibly can regarding anything remotely related to this case or its players.  This disproportionate method is wasteful and unlikely to be productive.  Plaintiffs have been

---

[1]     The "Motion" is Lead Plaintiffs' Motion to Compel the Production of Documents by the Tile Shop Defendants.  "Tile Shop" is Tile Shop Holdings, Inc.  The "Tile Shop Defendants" are Tile Shop, Robert A. Rucker, The Tile Shop, Inc., and Timothy C. Clayton.  "Plaintiffs" are Beaver County Employees' Retirement fund, Erie County Employees' Retirement System, and Luc De Wulf. "BP" is Beijing Pingxiu.

exhaustive in breadth and scope in every aspect of discovery thus far, yet they ask this Court for still more.

Plaintiffs sent their requests for production on June 29, 2015.  (Affidavit of Wendy Wildung ("Wildung Aff.") Ex. A.)[2]  They included 53 separate document requests.  (*Id.*) Plaintiffs have also propounded 147 requests for admission and five interrogatories, which had to be separately answered by numerous different sets of defendants.  (Exs. B, C.)  Purportedly in conjunction with their document requests, Plaintiffs also proposed 104 search terms for Tile Shop to apply in e-discovery.  (Ex. D.)  Many of these search terms were not pertinent or bore no relationship to Plaintiffs' document requests.  (*See id.*, search term nos. 4, 13, 15, 19, 20, 24, 34, 36, 38, 45, 49, 53, 55, 61, 77, 80, 81, 82, 87, 94, 97, 98, 101, 103, 104.)  Still others were incredibly long and complex, amounting to no meaningful parameter at all.  (*See, e.g., id.*, search term nos. 1, 8, 14, 26, 28, 29, 51, 60, 67, 71, 79.)

Shortly following their requests for production, Plaintiffs began a barrage of third party subpoenas.  To date, Plaintiffs have issued a total of 35 separate subpoenas—24 subpoenas *duces tecum* and 11 subpoenas to testify at a deposition—to a total of 25 separate third parties.  (Affidavit of Justin Krypel ("Krypel Aff.") ¶¶ 2-3.)

Some of these subpoenas do not seek relevant information.  For instance, Plaintiffs sent subpoenas to Wells Fargo, Provident Funding Associates, and Mortgage Electronic Registration Systems.  These subpoenas requested records relating to the bank accounts,

---

[2]      Exhibits to the Wildung Affidavit are referenced herein simply as "Ex. __."

mortgage, and mortgage papers of Fumitake Nishi.  Nishi is a former Tile Shop Purchasing Supervisor and the brother-in-law of Tile Shop's co-founder and former CEO, Robert Rucker.  Plaintiffs allege, and Tile Shop admits, that in December 2011 Nishi came to own Beijing Pingxiu, a Chinese export trading company that did business with Tile Shop.  Nishi's mortgage, however, has no relationship to any of these facts or any of the allegations in the Complaint.

Plaintiffs also subpoenaed two law firms that have represented Tile Shop.  One, Dorsey & Whitney, with the help of public accounting firm PricewaterhouseCoopers, conducted the internal investigation of Tile Shop after short-seller Gotham City Research LLC made various allegations against the company in a dossier it posted online in November 2013.  These allegations included that Tile Shop had engaged in undisclosed related party transactions with Nishi through BP as well as two Tile Shop suppliers, Nanyang Helin Stone Co. ("Nanyang") and Best Cheer Stone Group Ltd. ("Best Cheer").  The other law firm subpoenaed by Plaintiffs, Fredrikson & Byron, serves as Tile Shop's corporate counsel.  The vast majority of these documents, if relevant, are likely to be privileged or contain information that can be found by less intrusive methods.

### b.    The Tile Shop Defendants' Significant Document Production To Date.

Tile Shop has produced over 140,000 pages of documents in discovery to date. These include over 43,000 pages of documents from Tile Shop's files.  Tile Shop continues to review and produce documents that have hit on agreed upon search terms. Tile Shop's production to date contains several full categories of some of the most relevant documents, including:  board and committee minutes and presentations

pertaining to related parties, the Zhangs (who established and owned BP prior to Nishi),

LiXun Rucker (Robert Rucker's wife and Nishi's sister), vendors in China, margins and

inventory, and internal controls; organizational charts; all invoices and purchase orders

for Best Cheer, Nanyang, and all suppliers who did business through BP; expense reports

for Rucker, Nishi and Joseph Kinder (Tile Shop's Senior VP of Supply Chain) relating to

trips China[3]; and Nishi's entire personnel file and pay records.  (Krypel Aff. ¶ 4.)  Tile

Shop also produced a list of headquarters employees during the Class Period; a list of all

suppliers who did business with BP from its formation; and a list of all purchasing and

accounts receivable employees from January 1, 2008 – March 31, 2014.  (*Id.*)

        In addition to documents from its own files, Tile Shop produced documents

collected from BP during the internal investigation.[4]  Dorsey obtained documents from

five custodians affiliated with BP: Ying Liu, Fan Zhang, Ya Ping Zhang, Xu Zheng, and

XuiMiu Wu.  (Krypel Aff. ¶ 8.)  Tile Shop produced to Plaintiffs all of the BP documents

in Dorsey's Ringtail database.  (*Id.*)  The BP documents in the Dorsey database amounted

---

[3]      Tile Shop agreed to produce expense records of any trips James Beukelman took
to China, but Tile Shop was unable to locate any such expense reports.

[4]      This is no small matter.  Discovery in China is laborious.  *See* Convention of
March 18, 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters,
Article 33 and Declarations Notifications Reservations of the People's Republic of China,
*available at https://www.hcch.net/en/instruments/conventions/status-
table/notifications/?csid=493&disp=resdn* (last accessed Dec. 3, 2015) (noting that
Letters of Request process will only be honored for requests that are "of direct and close
connection with the subject matter of the litigation.").  Here, however, Tile Shop has
provided Plaintiffs with over 15,000 documents collected from five custodians in China.
Two of those custodians were the Zhangs.  Thus, Plaintiffs' dismissive references to the
"documents that BP voluntarily produced" (Pls' Mem. at 3) minimizes this significant
avenue of discovery.

to 15,685 documents, which totaled over 100,000 pages. (*Id.*) Tile Shop also produced 107 pages of documents that were obtained during the investigation from other sources that dealt with the control, formation or ownership of BP. (*Id.*)

### c.     Tile Shop Has Agreed To Produce A Substantial Amount of Additional Documents.

In addition to the documents it has already produced, Tile Shop has agreed to review and produce thousands more. Several categories of documents remain for Tile Shop to produce, including Nishi's electronic calendar; Tim Clayton's resume; auditor engagement and termination letters and amounts paid; and relevant Tile Shop policies, procedures, and internal controls. (Krypel Aff. ¶ 5.)

Tile Shop has also agreed to review and produce responsive documents from a large collection of documents. This is an ongoing process, and Tile Shop continues to review and produce documents on a rolling basis. This large collection of documents includes documents Tile Shop collected from its corporate files, as well as the following eleven custodians:

- Robert Rucker (former Chief Executive Officer, and current board member);

- Timothy Clayton (former Chief Financial Officer);

- Mark Davis (Current Controller);

- Kirk Geadelmann (Current Chief Financial Officer);

- Adam Hauser (Director of Investor Relations);

- Chris Homeister (Current CEO);

- Joseph Kinder (Senior VP – Supply Chain);

- Fumitake Nishi (former Purchasing Supervisor);

- LiXun Rucker (Robert Rucker's wife, never an employee);

- Fan Wang (former IT professional); and

- Josetta Zetah (former Controller).

(Krypel Aff. ¶ 9.)  Tile Shop has also agreed to process and review the underlying nonprivileged factual documents collected by Dorsey during the internal investigation from any overlapping custodians, to the extent they hit on any of the agreed-upon search terms.  Tile Shop has agreed to review documents from these custodians over a broad time period spanning from January 1, 2010 to March 31, 2014.  (*Id*. ¶ 10.)  As Plaintiffs point out (and attempt to use against Tile Shop), this period begins almost two years ***prior*** to the start of the Class Period.

Tile Shop has agreed to run 49 of the 104 search terms proposed by Plaintiffs across the documents it has collected and processed.  Tile Shop has already spent over 1,350 hours collecting, processing, reviewing and producing the documents it has agreed to provide to the Plaintiffs.  (*Id*. ¶ 11.)  Tile Shop is not finished with this review, and estimates that it will take at least an additional 260 hours to complete.  (*Id.* ¶ 12.)

### d.    The Issues In Dispute.

In their Motion, Plaintiffs seek to expand the time period of discovery regarding the Zhangs and the formation of BP by two years (to 1/1/2008 through 12/31/2009) for six current custodians: Robert Rucker, Joseph Kinder, Fumitake Nishi, LiXun Rucker, Fan Wang, and Tile Shop's corporate (non-custodian) files.  (Pls' Mem. at 1, 11, 13.) Plaintiffs also seek to compel Tile Shop to search for BP and Zhang-related documents

7

for the entire time period of January 1, 2008 through March 31, 2014 from four new custodians (Pls' Mem. at 1, 11, 18-21.): Adam Rucker, Hasim Khorakiwala, Carl Randazzo and James Beukelman.  As discussed below, Tile Shop disputes the need for Plaintiffs to expand discovery in either way.

## ARGUMENT: PLAINTIFFS' MOTION SHOULD BE DENIED

Federal Rule of Civil Procedure 26(b)(1) provides generally that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Although Rule 26 is liberal in scope, "[s]uch liberality . . . 'should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'" *McGinnis v. Soo Line R.R. Co.*, 2013 WL 1748710, at *2 (D. Minn. Apr. 23, 2013) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)); *see also Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 395 (N.D. Iowa 2009) ("[W]hen a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." (internal quotation marks omitted)).  Therefore "discovery may not be had on matters irrelevant to the subject matter involved in the pending action," and "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the

8

information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*,

197 F.3d 922, 925 (8th Cir. 1999) (alteration and internal quotation marks omitted).

Within the context of Rule 26, the Court "has broad discretion to supervise the

discovery matters" that come before it.  *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228,

238 (D. Minn. 2013).  The Court may, at any time, limit the frequency or extent of

discovery otherwise allowed by the Rules where (1) "the discovery sought is

unreasonably cumulative or duplicative, or can be obtained from some other source that

is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery

has had ample opportunity to obtain the information by discovery in the action;" or (3)

"the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.

Civ. P. 26(b)(2); *BreathableBaby, LLC v. Crown Crafts, Inc.*, 2013 WL 3349999, at *1

(D. Minn. July 1, 2013) ("Judge Leung has the authority, on his own motion, to 'limit the

frequency or extent of discovery otherwise allowed by these rules . . . .'").

## I.   PLAINTIFFS DO NOT NEED THE DOCUMENTS THEY SEEK.

### a.   Tile Shop Has Already Admitted Many Of The Points That Plaintiffs Purportedly Seek To "Prove" With Additional Discovery.

Plaintiffs cite numerous facts that Tile Shop has already admitted with respect to

BP and the Zhangs.  (Pls' Mem. at 6.)  This alone should defeat their Motion.  "The

quintessential function of Requests for Admissions is to allow for the narrowing of

issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to

provide notification as to those facts, or opinions, that remain in dispute."  *Lakehead Pipe

Line Co. v. Am. Home Assurance Corp.*, 177 F.R.D. 454, 457-58 (D. Minn. 1997); *see*

*also Xcel Energy, Inc. v. U.S.*, 237 F.R.D. 416, 420 (D. Minn. 2006) (citing same quote).

"Requests for admission are also intended to save costs by establishing uncontested facts

without the time, trouble and expense of proving these facts through discovery."

*Stockdale v. Stockdale*, 2009 WL 5217001, at *1 (E.D. Mo. Dec. 30, 2009); 7-36 Moore's

Federal Practice – Civil § 36.02 (2015) ("[R]equests for admission can save litigants

valuable time and substantial money, which would otherwise have to be spent

unnecessarily . . . to establish certain facts through complex, costly discovery procedures

. . . when such facts are not contested."); *see also Erone Corp. v. Skouras Theatres Corp.*,

22 F.R.D. 494, 500-01 (S.D.N.Y. 1958) (finding use of interrogatories to be unnecessary

because admissions pursuant to Rule 36 were better for "matters that will probably not be

in dispute").

      The admissions that Tile Shop has already made in this action do not entitle

Plaintiffs to take ***more*** burdensome discovery; they entitle Plaintiffs to ***less***.  Requests for

admission would serve no purpose whatsoever if, having admitted a particular fact, a

party still was required to submit to discovery and examination about it.  *See Pickens v.*

*Equitable Life Assur. Soc. of U.S.*, 413 F.2d 1390, 1393 (5th Cir. 1969) (Requests for

admissions' "proper use is as a means of avoiding the necessity of proving issues which

the requesting party will doubtless be able to prove.").

      Undeterred, Plaintiffs ask this Court to order Tile Shop to conduct additional

discovery on facts it has already admitted.[5]  For instance, Plaintiffs claim to want

---

[5]      As a compromise, Tile Shop also offered to provide some of the discovery that
Plaintiffs now seek by way of this Motion.  Tile Shop offered to search the documents of

discovery regarding the formation of BP, purportedly to demonstrate Tile Shop's involvement.  But, Tile Shop and Rucker have already admitted that they were involved in the formation of BP (Ex. E, RFA Nos. 114, 115); that, when BP was formed, it was owned by Jian Zhang and Pan Zhang (*id.* RFA Nos. 121, 122); that Tile Shop and Rucker knew that Pan Zhang owned BP when it was formed (*id.* RFA No. 124); and that the Zhangs are relatives of LiXun Rucker (*id.* RFA Nos. 97, 98).  Tile Shop is not trying to hide from these facts.

Given the admissions that Tile Shop has already made respecting BP and the Zhangs, there is little else Plaintiffs could hope to glean from conducting pre-2010 discovery, especially on numerous additional custodians.  Plaintiffs' exhaustive search for the elusive "smoking gun" is not a sufficient justification to impose substantial additional burdens on Tile Shop.  *See infra* at 18-21.

### b.   Plaintiffs' Own Motion Proves That They Do Not Need The Documents That They Seek.

Plaintiffs' brief proves too much in one other respect.  The numerous documents that Plaintiffs cite demonstrate that the custodians and January 2010 to March 2014 time period that Tile Shop has already agreed to search will yield the information relevant to

---

the two most relevant custodians—Nishi and Rucker—regarding the Zhangs and the formation of BP going back to 2008.  Plaintiffs rejected this offer, and instead demanded that Tile Shop add three additional custodians—Joseph Kinder, Fan Wang, and Adam Rucker—to the list.  Tile Shop explained why these three additional custodians were unnecessary, but Plaintiffs did not budge.  Thus, Tile Shop withdrew its offer.  (*contra* Pls' Mem. at 3.)  In this Motion, Plaintiffs add still three more custodians to the list: Carl Randazzo, Hasim Khorakiwala and James Beukelman. But, Plaintiffs offer no explanation why these additional custodians are necessary.  *See infra* at 16-18; *Miscellaneous Docket Matter No. 1*, 197 F.3d at 925 ("even if relevant, discovery is not permitted where no need is shown").

Plaintiffs' claims.  (*See* Pls' Mem. at 13 (claiming that documents already produced "have already confirmed" "many" of the allegations in the Complaint)).  For instance, Plaintiffs cite travel records that Tile Shop has already produced that demonstrate that Rucker, Nishi, and Kinder traveled together to China on numerous occasions from April 2009 through November 2011, an innocuous fact that Tile Shop readily admits.  (Pls' Mem. at 7; *see also* Ex. E, RFA Nos. 100, 101.)  Plaintiffs then speculate that additional discovery of documents from January 2008 through December 2009 "may shed light on the purpose of these trips."  (*Id.*)  It is difficult to see how documents from 2008 and 2009 could provide any information about trips that occurred in 2010 and 2011.  This aside, Plaintiffs may simply depose the people involved and ask them about the trips.  There is no indication, other than Plaintiffs' speculation, that additional document discovery will yield any information about any trip to China.

Similarly, Plaintiffs make much of wire transfer requests that Plaintiffs allege Nishi initiated in order to cover "engineering services" rendered from November 2011 to October 2013.  (Pls' Mem. at 10.)  Plaintiffs plucked these documents from the BP data set, which was unbounded by date.  Yet, they still fall within the January 2010 to March 2014 time period that Tile Shop agreed to search within its own documents.

Finally, Plaintiffs point to a bill of lading from July 2012, again from the BP production, which they claim provides evidence that "communications took place involving Tile Shop and BP that alerted Rucker to Nishi's involvement in BP."  (Pls' Mem. at 14.)  It is a stretch, even for creative Plaintiffs' lawyers, to infer that the CEO of a public company reads bills of lading.  Still, the fact that Plaintiffs cite this July 2012

document as particularly pertinent demonstrates that the time period Tile Shop has focused on for purposes of responding to Plaintiffs' requests is appropriate.

When Plaintiffs have had the opportunity to pick from a data set unrestricted by dates (the BP data), Plaintiffs have cited as the most relevant documents those from 2011 and 2012. This is no coincidence, as that is the key time period at issue; when Nishi took ownership of BP and Tile Shop became a public company. There is simply no reason to believe that a further extensive fishing expedition will yield additional relevant, non-duplicative information.

Moreover, Plaintiffs have not yet had an opportunity to review the additional documents that Tile Shop has already agreed to produce. Tile Shop is in the process of reviewing and producing thousands of additional documents. *See supra* at 6-7. Thus, Plaintiffs cannot possibly be in a position to know that they need yet more documents from Tile Shop. *See Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 587 (D. Minn. 1999) (denying additional depositions where requesting party had "broadly stated the supposed relevance of their testimony" but made "no showing that each of the deponents is essential to its discovery, and is not merely a replication" of existing discovery).

Tile Shop has offered to respond to additional discovery if Plaintiffs identify specific documents that suggest the need for a broader inquiry. Thus far, however, the evidence cited by Plaintiffs suggests that Tile Shop is already reviewing and producing the most relevant and important documents. At the very least, common sense dictates that Plaintiffs should be required to review all of the documents that Tile Shop has agreed

to produce before asking this Court for more.  *See Archer Daniels Midland Co.*, 187

F.R.D. at 589 (citing Rule 26(b) guidelines for limiting discovery and noting that they are

"not talismanic" but "are to be applied in a common sense, practical manner.").

## II.    PLAINTIFFS' MOTION SEEKS DOCUMENTS OF SPECULATIVE RELEVANCE.

Plaintiffs speculate that expanding the scope of Zhang and BP-related discovery

by two years and four additional custodians may turn up additional relevant documents.

(Pls' Mem. at 13, 18 ("reasonably likely").)  Plaintiffs offer no basis for this speculation.

Courts do not grant motions to compel where, as here, the evidence sought by the moving

party amounts to nothing more than a "fishing expedition."  *Hofer v. Mack Trucks, Inc.*,

981 F.2d 377, 380 (8th Cir. 1992); *Webb v. Ethicon Endo-Surgery, Inc.*, 2015 WL

4094006, at *2 (D. Minn. July 7, 2015).

Plaintiffs first seek to obtain documents from 2008 to 2010 regarding the Zhangs

and the formation of BP from six existing custodians.  Yet, Plaintiffs' own allegation is

that Nishi did not come to own BP until December 2011.  (Compl. [Dkt No. 66] ¶ 43;

Pls' Mem. at 8.)  Prior to that (and until August 2012), Tile Shop was a private company

with no public disclosure obligations.  Thus, Tile Shop's involvement with or even

control over BP from 2008 to 2010 is irrelevant to the question of whether, as of August

2012, the Tile Shop Defendants knew that Nishi owned BP.  The Tile Shop Defendants

cannot have known that fact until December 2011, and the Tile Shop Defendants have

already agreed to give Plaintiffs documents from that time period.

Plaintiffs counter that, if Tile Shop controlled BP, Tile Shop's transactions with BP would have required disclosure.  (Pls' Mem. at 13.)  Plaintiffs cite no law for this proposition.  More importantly, even if true, such obligation likewise would not have arisen until Tile Shop became a public company in August 2012.  *See generally* 15 U.S.C. § 78b (1934) (purpose of the 1934 Act is to regulate and control transactions in securities conducted upon securities exchanges and OTC markets); *id.* § 78l (requiring registration of publicly-traded securities).  Thus, even under Plaintiffs' formulation, the relevant question is whether Tile Shop controlled BP in 2012, not whether it did so from 2008 to 2010.  The same can be said of Plaintiffs' various out-of-context references to Judge Montgomery's Order in this matter.  (*See* Pls' Mem. at 7, 14.)  Nothing in that Order suggests that Judge Montgomery intended to open the floodgates to permit discovery into the entire history of Tile Shop's dealings with BP and the Zhangs.  To the contrary, Judge Montgomery expressly concluded that "Tile Shop's relationship with the Zhangs . . . is not relevant to this discussion."  (Mem. Op. and Order [Dkt. No. 108] at 15.)

The four additional custodians sought by Plaintiffs—Adam Rucker, Hasim Khorakiwala, Carl Randazzo, and James Beukelman[6]—are similarly irrelevant.  Even in their Motion (Pls' Mem. at 19-20), Plaintiffs provide very little justification for their pursuit of these custodians, beyond mere generic statements that they were high-level employees or employed by Tile Shop at the same time as Nishi.  *See Onwuka v. Fed.*

---

[6]     Tile Shop has already agreed to search the remaining six custodians at issue in Plaintiffs' Motion, just for a shorter time period than Plaintiffs would prefer.

*Express Corp.*, 178 F.R.D. 508, 516 (D. Minn. 1997) (courts should not accept at face value a moving party's assertion of "relevance," and must not allow parties to "roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.").

As Tile Shop has explained to Plaintiffs, the four additional custodians are irrelevant to the issues in this case:

Adam Rucker.  Adam Rucker ("A. Rucker") is an information technology professional at Tile Shop.  He is also the son of Robert Rucker from his first marriage. A. Rucker is related to LiXun only because LiXun is married to Robert Rucker.  He is not related in any way to Nishi.  Although it is true, as Plaintiffs say, that A. Rucker and Fan Wang both worked at Tile Shop at the same time, Plaintiffs fail to say why this matters in the least.  The fact that A. Rucker worked at Tile Shop at the same time as a relation of Nishi (and, indeed, Nishi himself) does not make A. Rucker any more likely to possess documents related to this matter.  Plaintiffs' assertion that A. Rucker "is believed" to have established IT infrastructure in China (Pls' Mem. at 19) is unsupported by any actual facts.  It also is without consequence, even if true, because nothing about Tile Shop's IT system is at issue in this matter.  A. Rucker has never had anything to do with purchasing, sourcing, accounting, or any of the subject matters at issue in this case.

Hasim Khorakiwala.  Khorakiwala was employed by the Tile Shop as a Purchasing Administrator until he left the company in April 2012, prior to Tile Shop going public.  Although he worked in the Purchasing Department, he worked primarily on transactions in India, and never had any responsibility for China.  Plaintiffs appear to

believe that Khorakiwala's documents should be subject to search merely because he worked at Tile Shop headquarters at the same time as Nishi.  (Pls' Mem. at 20.)  This attempt at guilt by association is ludicrous.  Plaintiffs provide no facts suggesting that Khorakiwala would have any knowledge of Nishi or Tile Shop's dealings in China. Plaintiffs assert that Khorikawala "is believed to have information concerning Tile Shop's dealings with . . . BP."  But Plaintiffs do not say what that information is or why it would be relevant.  Tile Shop readily concedes it did business with BP.  Thus, the generalized information about Tile Shop's dealings with BP that Plaintiffs "believe" Khorakiwala may have is not helpful.

Carl Randazzo.  Randazzo is the top sales person for Tile Shop.  It is, therefore, no great surprise that he is "a long-time employee" who attended Tile Shop board meetings and monthly sales meetings with other Tile Shop executives.  (*See* Pls' Mem. at 20.) Again, Plaintiffs appear to believe they are entitled to scour the files of Tile Shop employees, merely because they were employed at the company at the same time as Nishi and participated in the regular operations of the company.  Such a standard would explode discovery obligations.  Plaintiffs make no effort whatsoever to connect Randazzo to Nishi's disguised dealings with BP.  Nor do they make any attempt to articulate what relevant knowledge they think Randazzo may have.

James Beukelman.  Beukelman was a finance professional who left the company in August 2011, long before the start of the Class Period.  As highlighted throughout this brief, the early time period during which Beukelman was employed by Tile Shop is wholly irrelevant to this case.  Plaintiffs do not so much as attempt to draw any

connection between Beukelman and BP or even Nishi.  The best that Plaintiffs can muster is that Beukelman is alleged to have "formed foreign entities" on behalf of Tile Shop.  Even if this is correct, Tile Shop has already admitted that it helped form BP. And, even if Beukelman were involved in that process, Plaintiffs do not contend that Beukelman had any ongoing relationship or work with BP.  Plaintiffs do contend that, by virtue of his position at the company, Beukelman "was presumably privy" to information about related parties.  This extremely vague assertion is speculative at best.  Plaintiffs do not say what kind of information Beukelman may have known, about what related parties, or why, specifically, he might have known any information relevant to this matter.  Moreover, Plaintiffs provide no evidence to support their assertion.

## III.   PLAINTIFFS' REQUESTS ARE OVERLY BROAD AND UNDULY BURDENSOME.

The burden on Tile Shop of conducting the additional discovery Plaintiffs have requested would be substantial, with no evidence that it would generate any unique additional relevant information for Plaintiffs.  The Rules dictate that a court must reject discovery requests seeking even arguably "relevant" information if the benefits to be obtained are outweighed by the burdens and expenses involved.  *Archer Daniels Midland Co.*, 187 F.R.D. at 589.  Applying these rules and exercising their discretion to control discovery, courts routinely deny motions to compel where the request at issue is "overbroad," *see McGinnis*, 2013 WL 1748710 at *2, or unduly burdensome, *Marook*, 259 F.R.D. at 396.

18

Plaintiffs want two additional years' worth of data regarding the Zhangs and the formation of BP from five custodians and the corporate files of Tile Shop. Plaintiffs also want Tile Shop to add four new custodians to the mix, requiring the collection, review, and production of a huge additional population of data.

The Burden Of Producing Documents From 2008-2010. Plaintiffs attempt to minimize the impact of producing "only two years of materials." (Pls' Mem. at 16.) Counsel misunderstand the burden this would impose on Tile Shop. Based on Tile Shop's analysis, it would have to devote at least an additional 76 hours of time to processing, searching, reviewing and producing the 2008-2010 documents that are the subject of this Motion. (Krypel Aff. ¶ 13.) This figure solely applies to the six custodians that are currently part of Tile Shop's discovery commitments. Tile Shop would incur additional substantial costs if it is ordered to search the four additional custodians suggested by Plaintiffs, as discussed below.

Given the marginal relevance of the materials sought and the substantial documents Tile Shop has already committed to producing, the potential benefits to Plaintiffs of their additional requests do not outweigh the burdens on Tile Shop. *See Webb v. Ethicon Endo-Surgery, Inc.*, 2015 WL 5568022, at *4 (D. Minn. Sept. 22, 2015) ("Irrespective of whether such emails would be relevant, if the burden of producing them outweighs the value of the emails' production, the Federal Rules of Civil Procedure permit the court to restrict the scope of discovery.").

The Burden Of Producing Documents From The Four Additional Custodians. The burden on Tile Shop of processing and reviewing documents relating to the Zhangs and

the formation of BP from four new custodians over the time period January 1, 2008 to March 31, 2014 would also be substantial.  Tile Shop estimates that it would require at least an additional 300 hours to process, search, review, and produce documents for the four additional custodians.  (Krypel Aff. ¶ 20.)

Two of these custodians' email—Adam Rucker and Carl Randazzo—are still on Tile Shop's "live" email system.  For purposes of responding to this Motion (not because it thinks these custodians are relevant) Tile Shop requested inventory information for the entire email boxes of these two custodians.  Both appear to be heavy users of email, generating quite large email boxes: Adam Rucker (15.35 gigabytes encompassing over 200,000 messages), and Randazzo (20.9 gigabytes encompassing over 100,000 messages).  (Krypel Aff. ¶ 14.)  In total, this generates over 36 gigabytes of additional data that Tile Shop would have to process, search, review, and produce.  Because this data is not currently processed and is not in a searchable form, Tile Shop is unable to estimate how much of this data would hit on BP or Zhang-related search terms, or how long such documents would take to review.  However, given the enormous size of these two email boxes, the additional time needed is likely to be substantial.

The third and fourth custodians Plaintiffs want to add are James Beukelman and Hasim Khorakiwala.  Beukelman has not been with the Company since 2011, and Khorakiwala not since 2012.  (Krypel Aff. ¶ 15.)  Thus, their emails are no longer on Tile

Shop's "live" system.[7]  In order to access their data, Tile Shop would have to go to its emergency backup tapes.  For some time periods, Tile Shop has backup tapes corresponding with the month end, while for other periods Tile Shop has backup tapes for every business day.  (Krypel Aff. ¶ 17.)  Using these backup tapes, Tile Shop could restore a significant portion of its IT system, as of the specific date of the backup.  To ensure a complete collection of Beukelman and Khorakiwala's data, Tile Shop would have to restore the backup tapes for numerous points in time, because custodians (not under a legal hold at the time) typically delete emails regularly.

The added cost of this process would be substantial.  Based on a bid from an outside vendor, the cost to restore Tile Shop's IT system from backup tapes as of just one date would be approximately $4,500-$4,950 for the restoration alone.  (Krypel Aff. ¶ 18.) Tile Shop would incur this cost for numerous backup dates, amounting to tens of thousands of dollars in costs.  Tile Shop would then, of course, incur the time of pulling, processing and reviewing Beukelman and Khorakiwala's data from that restored environment.  (*Id.* ¶ 19.)  Because Tile Shop would have to incur significant costs to even access the data, it is difficult to definitively determine what the cost to Tile Shop would be for these custodians if the Court grants Plaintiffs' Motion.

## CONCLUSION

Plaintiffs' Motion is an unnecessary, premature and unreasonable grab for additional documents that are unlikely to have any relevance to the matters at issue.

---

[7]     Beukelman's "home directory"—essentially, his personal folder on Tile Shop's shared computer server—is still on Tile Shop's "live" system.  Tile Shop has already collected and reviewed those documents.  (Krypel Aff. ¶ 16.)

21

Plaintiffs have already been provided with hundreds of thousands of pages of documents in this matter, with more to come.  If granted, Plaintiffs' Motion would put significant burdens on Tile Shop on the basis of Plaintiffs' mere speculation that such efforts may turn up additional useful information.  That is not a fair trade, and the Court should reject Plaintiffs' Motion in its entirety.


DATE:  December 3, 2015.                    **FAEGRE BAKER DANIELS LLP**

                                            /s/ Justin P. Krypel
                                            Wendy J. Wildung (#117055)
                                            Justin P. Krypel (#0389385)
                                            2200 Wells Fargo Center
                                            90 South Seventh Street
                                            Minneapolis, MN 55402-3901
                                            Phone : 612/766-7000
                                            Fax:     612/766-1600
                                            wendy.wildung@faegrebd.com
                                            justin.krypel@faegrebd.com

                                            ***Counsel for the Tile Shop Defendants***

US.103350701.09